SIMPSON S. REYNOLDS, PLAINTIFF IN ERROR, V. THE BUR-
LINGTON & MISSOURI RIVER RAILROAD COMPANY IN
NEBRASKA, DEFENDANT IN ERROR.

1. **Evidence:** INSUFFICIENT TO SUSTAIN VERDICT. In the case
presented, the plaintiff introduced his evidence and rested.
Thereupon the defendant moved a non-suit, on the ground of
the insufficiency of the evidence, which was granted. Evidence
examined and held inadequate to support a verdict for the
plaintiff.

2. ——: NON-SUIT. When the evidence produced by the plaintiff
is not sufficient to support a verdict in his favor, a non-suit is
proper.

3. **Breach of Contract.** In an action to recover damages for
breach of contract by the defendant, if the plaintiff himself is
in inexcusable default, he cannot recover.

4. **Unexecuted Waiver:** CONSIDERATION ESSENTIAL. A suf-
ficient consideration is essential to the enforcement of an unexe-
cuted agreement to waive prompt payment according to the
conditions of a written contract for the sale of land, where time
is made essential.

ERROR to the district court of Lancaster county.
Tried below before POUND, J.

*Lamb, Billingsley & Lambertson,* for plaintiff in error.
The pre-emption contract, and payments and improve-
ments under it, was not a mere option agreement to
purchase. *Perkins v. Hadsell,* 50 Ill., 216. If it were,
its terms had been waived and varied by the parties.
The reply put in issue conditions precedent. *Birdsall
v. Carter,* 5 Neb., 517. *Nichols v. Hail,* 4 Neb., 214.
*Livesey v. Hotel,* 5 Neb., 50. *Kellogg v. Lavender,* 9
Neb., 418. The question of waiver is one of fact.
*Page v. Greeley,* 75 Ill., 400. If vendor has disabled
himself from conveying, purchase money and damages
may be recovered. *Eaton v. Redick,* 1 Neb., 305. *Foley
v. McKeegan,* 4 Ia., 2. *Pumpelly v. Phelps,* 40 N. Y.; 60

*T. M. Marquett*, for defendant in error. Plaintiff was in default. *Longworth v. Mitchell*, 26 Ohio St., 334, *Gilbert v. Port*, 28 Id., 277. The right to improvements was forfeited. The petition makes no such claim. *Hanschild v. Stafford*, 25 Ia., 428. *Smith v. Trustees*, 28 Id., 500. Petition alleges absolute contract of sale— proof shows unfulfilled option to buy. There was no new consideration for the waiver alleged. *R. R. Co. v. Buckley*, 21 Kans., 296. *Hughes v. Davis*, 40 Cal., 117. *Bliss v. Shwarts*, 65 N. Y., 448.

LAKE, J.

The action below was based upon an alleged breach, by the defendant, of a contract known as a "pre-emption certificate," issued by the company to the plaintiff on the 15th day of April, 1872. By the terms of this certificate the defendant bound itself to sell the land in controversy to the plaintiff, upon certain terms and conditions, to be embodied in a more formal contract, after the company had obtained its patent from the United States. This formal contract, it was stipulated, should be applied for by the purchaser within sixty days after receiving notice, which the company was to give, that the patent had been obtained. Among the several provisions of this pre-emption certificate, was this: "In case the pre-emption applicant shall fail to pay for, or enter into contract to pay for the land which he may have pre-empted before the expiration of said sixty days, he will thereby lose all benefit of his pre-emption right, and the money which he may have paid thereon will be forfeited. In case a pre-emption applicant shall neglect or refuse to comply with the terms and conditions above named, and shall so forfeit his pre-emption right, he will also forfeit all improvements that he may have made upon the land."

As to what the terms of the contract subsequently

to be made were to be, the petition is almost silent. In one place it is alleged that the company agreed to "make a contract with the plaintiff in the usual form, for the sale of the land,    *    *    *    which contract was to be in usual form, for warranty deed of said premises when the same was paid for, in accordance with the terms then agreed upon between this plaintiff and the said defendant, of long credit, or ten years credit, but which terms of payment were afterwards, by mutual agreement,    *    *    *    wholly set aside and waived." This is the substance of the charge on this point, although several times repeated with slightly changed phraseology. This informs us that the contract was to be in "*usual form*," and for a "warranty deed" of the land, *when "paid for* in accordance with the terms agreed upon." But contracts for the sale of realty are not of so uniform a structure that courts can judicially know the terms of a particular one by being told that it is for the sale of land. So, too, of the terms of payment—the several amounts, and time of each—the court cannot know them by being told that they were those "agreed upon," especially when this is immediately followed by the declaration that they were afterwards "wholly set aside and waived,"without any others being substituted for them.

The plaintiff, however, concedes that he did not comply with the terms of payment, whatever they were, whereby, according to a clause of the certificate above quoted, he lost "all benefit of his pre-emption right," his payments previously made, and improvements on the land, unless in some way relieved from the forfeiture. And he endeavors to thus relieve himself by alleging that "during the year 1875, the said defendant, to induce the plaintiff to continue to cultivate and improve the said premises, and enhance their value, and to finally pay for the same, expressly agreed to

waive, and did waive any and all further payment for said lands, according to the terms of said contract, so far only as the time of payment was concerned, and expressly agreed with the plaintiff if he would not abandon said lands and said contract," which he says he then contemplated doing, " but would go on and cultivate, and improve the same, that the plaintiff might pay for the same whenever it should become convenient" for him to do so. This matter thus plead in avoidance of the otherwise conceded forfeiture was in issue, and on the trial was the pivotal question.

We have exceedingly grave doubts as to whether the petition states a cause of action, but, without expressly deciding this question, we will pass to the evidence of the alleged waiver of payments, and see whether the non-suit granted by the court below, which is the principal error complained of, was proper.

From a copy of the pre-emption certificate, and the other evidence offered by the plaintiff, we learn that the consideration to be paid for the land was ten dollars per acre. Also that the term "long credit," mentioned in the petition, meant that for each of the first two years succeeding the purchase, the plaintiff was obliged to pay annually, in advance, six per cent interest on the principal, and annually thereafter one-ninth of the principal, together with interest as above on the amount remaining unpaid. Of these several payments thus provided for in the pre-emption certificate, the only ones made were those of the interest for the first three years, the last two, however, long after they were due; the last one being August 17th, 1874, of the interest due April 15th, of that year. No other payments have ever been made, or tendered. And it is conceded that on October 31st, 1877, the defendant sold the same land to one Allen Price, which is the breach of contract complained of.

As to the alleged waiver of payment, "according to the terms of said contract," there was really no evidence for the jury to pass upon except the receipt of the two installments of over-due interest. All that can reasonably be claimed from the other acts and sayings of the agents of the company is, that they evinced a decided willingness to not insist upon a literal compliance with the agreement in this particular. This disposition is clearly shown by the two letters introduced by the plaintiff, and on which he chiefly relies to make out his alleged case of waiver. The first of these letters was written June 24th, 1875, in answer to one from the plaintiff, giving his reasons for not meeting payments previously due, and then unpaid. It was in these words: "I hope matters are not as bad with you as you state in yours of to-day; but if it will be any help to you, we will wait until you can feel it is your interest without injuring yourself, to make us a payment on account. We want all we can get, but, nevertheless, not so much so as to oppress those who are in reality building the country up, and you will always find the company willing to meet you, or any of their purchasers half-way, just so long as they are satisfied that they are helping honest and stirring men, who are struggling to do the best they can under the circumstances.

"Signed,                              A. E. TOUZALIN,
                              "Land Commissioner."

This waiver, if it may be called such, was not only without consideration, which was essential, and purely voluntary, but fixed no time within which the overdue payments would be received. In this respect it falls far short of supporting the allegation that the times of making payments were postponed as an inducement to the plaintiff not to abandon the land, etc. So far as the evidence shows, nothing more of importance oc-

Reynolds v. B. & M. R. R. Co.

curred until June 8th, 1877, at which time *four-ninths* of the principal, three years' interest, together with a large amount which the company had paid for taxes on the land, were due. On that day, another letter from the same source was sent to the plaintiff, of which the following is a copy:

"*Simpson S. Reynolds, Esq., Seward, Neb.:*

"DEAR SIR—Having received nothing from you since Sept. 30th, 1874, and having compelled us to pay the taxes for several years on this land, we are inclined to think that it is time for you to do something toward payment of arrearages on your contracts. The condition is such that the land at present is not a source of revenue to us, and we must ask what arrangements you can make respecting the payments long past due, as we cannot carry you longer in this unsatisfactory manner.      *     *     *

"Signed,              A. E. TOUZALIN, L. C."

This letter was received by the plaintiff over four months before the company sold the land to Price, but he did not answer or pay any attention whatever to it. On his cross-examination as to this letter, the following was brought out:

Q. You never answered this last letter of the company?

A. I think not. *I thought it was none of their business.*

This certainly was a bad showing for the plaintiff himself to make, and it hardly commends him to the court as one who was honestly striving to meet the obligations he had assumed. The company had dealt very leniently with him for several years, and doubtless would have continued to do so, had he evinced any disposition to do what was reasonable himself. Where one is so flagrantly in default himself in the

performance of a contract as was this plaintiff, and shows no desire or willingness to perform his part of it, he is certainly in no situation to complain or to seek damages for its non-performance by another.

After a careful consideration of the evidence produced by the plaintiff, we think the company was justified in treating the pre-emption agreement as abandoned by the plaintiff, and in selling the land to another. There was not evidence that would have justified a verdict for the plaintiff, and the non-suit therefore was properly ordered.

· JUDGMENT AFFIRMED.