## D. A. HALE V. D. J. SHEEHAN.

FILED JUNE 16, 1897. NO. 7360.

1. **Bill of Exceptions.** An unauthenticated bill of exceptions will not be considered.

2. **Contracts: CONSTRUCTION.** A practical construction placed upon an ambiguous contract by the parties will generally be adopted by the courts.

3. ———: BREACH. One who refuses to perform his part of a contract cannot recover for a breach by the other party.

ERROR from the district court of Madison county. Tried below before JACKSON, J. *Affirmed.*

*Willis E. Reed,* for plaintiff in error.

*Powers & Hays, contra.*

NORVAL, J.

The petition filed in the court below alleges, substantially, that plaintiff and defendant, during the summer and fall of 1889, were partners engaged in the buying and selling of horses, under the firm name of Hale & Sheehan, plaintiff furnishing the capital for the enterprise and the defendant his services and skill, the profits and losses to be shared equally; that on the 15th day of

October there were sixty-one head of horses and sixteen sucking colts belonging to the firm on the ranch of the defendant, in Fremont county, Wyoming, and on said date the partnership was dissolved and a settlement between the partners was had, whereby defendant was to retain possession of the horses for a specified time and receive as his share of the profits from the venture the sum of $425; that an agreement was then entered into between plaintiff and defendant, of which the following is a copy:

"This agreement, made and entered into this 15th day of October, 1889, by and between D. J. Sheehan of the first part, and D. A. Hale, party of the second part, witnesseth: That the said D. J. Sheehan agrees to winter and care for thirty-nine head of horses and sixteen sucking colts, said horses being known as the Wilson horses, on the ranch of D. J. Sheehan and C. P. Sheehan, in Fremont county, Wyoming; and the said D. J. Sheehan further agrees to deliver said horses and colts to D. A. Hale, or his agent, at Casper, in stock-yards of F., E. & M. V. R. Co., in Carson county, Wyoming, on the 15th day of May, 1890, and the said D. J. Sheehan further agrees to load on the cars of the F., E. & M. V. R. Co. at Casper, Wyoming, twenty-two head of horses, being the largest of the horses known as the Wilson horses, now on the ranch of D. J. and C. P. Sheehan, in Fremont county, Wyoming, said twenty-two head of horses to be delivered on the cars on or before November 15, 1889, and shipped to D. A. Hale, at Humphrey, Nebraska; and the said D. A. Hale agrees to pay, or cause to be paid, to the said D. J. Sheehan, in consideration of his faithful performance of the conditions foregoing, the sum of ($425) four hundred and twenty-five dollars, payment to be made as follows: Four hundred and twenty-five dollars to be paid to the said Sheehan, or his order, on the delivery of the horses at Casper on the 15th day of May, 1890, and in case the said Sheehan shall draw an amount not exceeding $200 on the contract from Ottis & Murphey, bankers

at Humphrey, Nebraska, the said D. A. Hale pay to the discount charged by said bank, provided the said Sheehan shall not have the right to draw the said $200 before January 1, 1890. It is agreed and understood that the stock referred to in this contract is more fully described as follows: Branded on right shoulder thus (:); one bay horse branded on right shoulder 'C. H.;' one brown mare branded on right shoulder thus, 'T;' the sixteen sucking colts having no brand; said horses being all sizes and ages.

In witness whereof, we have hereunto set our hands, at Humphrey, Nebraska, this 15th day of October, 1889.

"D. J. SHEEHAN.

"D. A. HALE.

"Signed, sealed, and delivered in the presence of

"C. D. MURPHEY."

The petition further alleges, in effect, that in November the defendant converted to his own use a span of black Morgan mares belonging to plaintiff, of the agreed value of $200, and that it was mutually agreed that said sum should be applied by the defendant as part payment on said contract; that the time for the delivery of the horses was, by agreement of the parties, extended to June 15, 1890; that twenty-two head of horses defendant delivered to plaintiff as provided in said contract; that on said last named date plaintiff, at the expense of $35, went to Casper, Carson county, Wyoming, to receive from the defendant the remainder of plaintiff's stock of horses, and to perform all the conditions of said contract on his part to be kept. Yet defendant failed, neglected, and refused to deliver to plaintiff said horses, which were of the value of $2,000, but converted the same to his own use. The answer of the defendant admits the settlement and the execution of the contract as set forth in the petition; denies all the other averments in plaintiff's pleading, and alleges substantially that defendant entered immediately upon the performance of the contract by taking charge of, herding, feeding, and caring for said horses in

a good husband-like manner, and continued so to do for
the period of time mentioned in the contract; that on or
before November 15, 1889, defendant shipped to plaintiff
twenty-two head of the largest and best of said horses;
that in January, 1890, defendant demanded of plaintiff,
and also of Ottis & Murphey, bankers at Humphrey, Ne-
braska, the $200 then due by the terms of said contract,
but payment was refused, and no part thereof, nor of the
balance, to-wit, $225, of the amount due on the said con-
tract has been paid; that upon such refusal to pay plaint-
iff was notified that the stock would be retained and sold
to pay the charges and expenses for keeping the same;
that defendant kept, herded, and cared for said stock for
four months after the expiration of the time provided in
the agreement for keeping it, which was reasonably
worth the sum of $180; that no part of which having
been paid by the plaintiff, defendant filed a lien on said
stock for herding and keeping, and proceeded to enforce
said lien under the provisions of certain sections of the
statute of Wyoming, which are pleaded in the answer.
The reply was a general denial. The trial resulted in
a verdict and judgment in favor of the defendant, to
reverse which is the purpose of these proceedings.

The assignment in the petition in error relating to the
insufficiency of the evidence to sustain the verdict, and
those directed against the rulings of the court during the
progress of the trial, are not available, since there is no
authenticated bill of exceptions preserving the evidence
adduced and the exceptions to the rulings of the court
below. (*Andres v. Kridler*, 47 Neb., 585; *Reuther v. Zim-
bleman*, 50 Neb., 165.)

Complaint is made of the sixth and ninth paragraphs
of the court's charge to the jury, which are as follows:

"6. You are instructed that the execution of the con-
tract set out in the petition is admitted, and that under
the provisions of the contract the defendant was entitled
to have advanced to him by the plaintiff the sum of $200
on January 1, 1890, if he so desired."

"9. If you find from the evidence that the plaintiff has failed and refused to pay the defendant the sum of $200 due defendant on January 1, 1890, then defendant was released from any obligation to deliver said horses at Casper, Wyoming, and had the right to retain possession of the same until the amount so due was paid, and would be entitled to enforce his claims for such feed and care under the lien laws of the state of Wyoming, and if the defendant, in good faith, sold the horses in controversy under the lien laws of Wyoming to satisfy his claim for feed and care, then the plaintiff in this case cannot recover, and your verdict should be for the defendant, unless it appears that the property so sold was sold for more than enough to satisfy the amount due the defendant for care and feed, together with the reasonable, lawful costs of sale."

It is claimed that the construction placed upon the written contract by the parties and set out herein is erroneous, in that the jury were advised that it was incumbent upon plaintiff to pay defendant $200 on the contract on January 1, 1890, if the latter requested it. We cannot say that the construction adopted by the court was erroneous. Whether so or not might depend upon the evidence adduced on the trial, since if that disclosed the parties placed a particular construction upon their ambiguous agreement, it is entitled to consideration by the courts. (*School District v. Estes,* 13 Neb., 52; *Rathbun v. McConnell,* 27 Neb., 239; *Paxton v. Smith,* 41 Neb., 56; *Woodard v. Baird,* 43 Neb., 310; *Davis v. Ravenna Creamery Co.,* 48 Neb., 471.) The contract before us is somewhat vague and uncertain in its provisions as regards payments. In the briefs on either side it is asserted that the parties have, by their actions and conduct, placed a construction upon the controverted clause of the agreement, but they disagree as to what that interpretation was, and we are unable to determine the same for ourselves owing to the fact that it is not permissible for the court to look into the document pur-

Hale v. Sheehan.

porting to be the bill of exceptions in the case, since it is not certified by the clerk of that court to be either the original or a copy. We must, therefore, assume that the trial court adopted in its charge the construction placed upon the contract by the parties as to the terms of payment, and if it did the plaintiff has no right now to complain. The contention of plaintiff is that defendant was not to receive any part of the $425 until the stock was delivered, but this construction ignores and makes entirely meaningless the clause of the agreement that "said Sheehan shall draw an amount not exceeding $200 on this contract from Ottis & Murphey, bankers at Humphrey, Nebraska, the said D. A. Hale to pay the discount charged by the said bank, provided that said Sheehan shall not have the right to draw said $200 before January 1, 1890." If the evidence shows, and for the purposes of this case we must so assume, that the meaning placed upon the provision was that the defendant was so entitled, if he so desired, to have advanced to him $200 by drawing upon plaintiff for that amount through the bank of Ottis & Murphey, the criticism urged against the instructions must fall to the ground. (*Reynolds v. Burlington & M. R. R. Co.*, 11 Neb., 186; *Walter v. Reed*, 34 Neb., 544; *Lexington Mill & Elevator Co. v. Neuens*, 42 Neb., 649; *Chicago, B. & Q. R. Co. v. Cochran*, 42 Neb., 531.)

It is urged that the seventh and eighth instructions given by the court on its own motion are faulty, because not based upon the evidence. Whether erroneous in that respect we are unable to determine for want of authenticated bill of exceptions, and for the same reason the assignments based upon the refusal of instructions requested by plaintiff are unavailing.

No reversible error appearing in the record, the judgment is accordingly

AFFIRMED.