CLARENCE BODTKE ET AL., APPELLEES, V. JOSEPH BRATTEN,
APPELLANT.

88 N. W. 2d 159

Filed February 7, 1958.   No. 34283.

Beatty, Clarke, Murphy & Morgan, Frank E. Piccolo, Jr., and Donald W. Pederson, for appellant.

Edward E. Carr and Robert E. Roeder, for appellees.

Heard before CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CHAPPELL, J.

Plaintiffs, Clarence Bodtke and Edward Summers, who were jointly interested in the business of boarding and caring for cattle for others on certain lands in Lincoln County, brought this action against defendant, Joseph Bratten, seeking to recover for breach of a contract by defendant whereby, for an agreed consideration, plaintiffs agreed to and allegedly did furnish the kind of pasturage, feed, and care which they agreed to furnish for certain cattle owned by defendant. In that connection, by answer and cross-petition, defendant sought to recover damages from plaintiffs for breach of the contract by them in failing to furnish defendant's cattle the kind of pasturage, feed, and care they agreed to furnish, which allegedly caused defendant's cattle to be injured and damaged.

Plaintiffs' petition alleged in substance as follows: That on or about June 10, 1956, plaintiffs and defendant entered into an oral contract whereby plaintiffs agreed to accept 100 cows with calves, and a herd bull, belonging to defendant, and provide such pasturage, feed, and care for them as might be necessary under the circumstances

until October 1, 1956, for which defendant agreed to pay $5 per cow and calf per month, with the herd bull being kept and cared for free of cost; that, as agreed, defendant placed such cattle in plaintiffs' pasture on June 18, 1956, and paid $500, the first month's rent, in advance; that, as agreed, plaintiffs then commenced to graze defendant's cattle by furnishing the proper pasturing and watering as good husbandry required, and continued to do so until August 8, 1956, when defendant, without just cause or permission of plaintiffs, entered upon their lands and removed his cattle from plaintiffs' custody and control, and refused to pay further for their pasturage, feed, and care, in violation of the terms of the contract; that thereafter plaintiffs diligently attempted to obtain other cattle to keep and care for until October 1, 1956, and thus mitigate the damages caused by defendant's wrongful breach of the contract, but plaintiffs were unable to do so until September 16, 1956, when they did obtain other cattle and mitigate plaintiffs' damages $95.94; and that plaintiffs fully performed as agreed, but defendant failed and neglected to do so, whereby plaintiffs suffered a loss of $1,233.24, less $95.94, or $1,137.30. Plaintiffs prayed judgment against defendant for that amount and costs.

To plaintiffs' petition, defendant filed an answer and cross-petition. Therein he denied generally, but admitted that on or about the date alleged plaintiffs and defendant orally agreed that defendant would furnish the cattle aforesaid for pasturage and care by plaintiffs during the summer of 1956 at the price alleged, and that defendant did so as agreed on or about June 18, 1956, and paid plaintiffs $500 advance pasturage thereon. On the other hand, defendant alleged that plaintiffs agreed to look after said cattle, care for them in a good and proper husbandry-like manner, and keep them upon broom and alfalfa pasturage, but plaintiffs failed and neglected to do so, which caused defendant's cattle and calves to lose weight and be stunted and damaged; that

on or about August 4, 1956, defendant became aware of plaintiffs' failure to furnish the pasturage, feed, and care as agreed, whereupon defendant told plaintiffs that he would move his cattle away unless they furnished pasturage as agreed, but they failed to do so; and that on August 8, 1956, defendant removed his cattle from plaintiffs' pasture and refused to pay plaintiffs for any further pasturage. Defendant alleged that plaintiffs' failure to provide pasturage, feed, and care as agreed damaged his cattle $3,000, and that the $500 paid plaintiffs in advance was obtained by misrepresentation and without consideration. Defendant prayed for judgment against plaintiffs for $3,500 and costs, together with dismissal of plaintiffs' action. Plaintiffs' reply to defendant's answer and answer to his cross-petition was a general denial.

Upon trial to a jury, it returned a verdict which found for plaintiffs on their petition, and against defendant on his cross-petition, and awarded plaintiffs $737.30. Subsequently, defendant's motion for new trial was overruled and judgment was rendered on the verdict, plus $5 interest and costs. Therefrom defendant appealed, assigning some 15 alleged errors, the effect of which was to contend, insofar as important here: (1) That the verdict and judgment were clearly against the weight of the evidence and contrary to law; (2) that the trial court erred prejudicially in the admission of certain evidence; and (3) that the trial court erred in the giving and refusing to give certain instructions. We sustain assignment No. 3.

A search of the voluminous record discloses that there was no material dispute with regard to the making of the contract or the details thereof, except the kind of pasturage plaintiffs agreed to furnish and the duration of the contract, although defendant admitted in his answer and cross-petition that it was "during the summer of 1956."

The primary issues for the jury were: (1) Did plain-

tiffs furnish defendant's cattle the kind of pasturage, feed, and care they agreed to furnish, and if they did so but defendant breached the contract, what amount of credit should defendant be given in mitigation of plaintiffs' alleged damages; and (2) if plaintiffs breached the contract by failing to furnish defendant's cattle the kind of pasturage, feed, and care they agreed to furnish, were defendant's cattle injured and damaged thereby, and if so, how much?

To recite the evidence in detail would serve no purpose except to unduly prolong this opinion. It is sufficient to say that the testimony of the several witnesses called by the parties was conflicting in material respects upon the foregoing issues. The evidence adduced by plaintiffs sustained their theory of recovery as alleged in their petition except with regard to the amount of mitigation, and the evidence adduced by defendant sustained his theory of defense and recovery pleaded in his answer and cross-petition. The jury heard and observed the witnesses and reached a conclusion by its verdict. It is elementary that this court has no authority to set aside such a verdict unless it is clearly wrong as not supported by competent evidence or contrary to law. Under the facts and circumstances presented herein, we conclude that the first assignment should not be sustained.

With regard to the second assignment, defendant argued that the trial court erred prejudicially in the admission of certain testimony by one Guy Baker, who had been an animal husbandman at an experimental station since 1942, and was an expert cattleman of many years experience. Plaintiffs had taken three photographs of some of defendant's cattle and calves on August 8, 1956, the time of their removal by defendant. Such photographs had been offered by plaintiffs and received in evidence without objection, and, although plaintiffs' witness, Guy Baker, had never seen defendant's cattle and calves, and knew nothing about their previous con-

dition, he was permitted, over objection, to interpret and give his opinion, from observation of the photographs, that defendant's cows were in good condition and his calves were in fair or better condition on that date.

The objections of defendant to such testimony were that it would be incompetent, irrelevant, and immaterial, and call for a conclusion of the witness, the jury being as qualified and competent to pass upon it as the witness. Objections to the admission of such testimony, and comparable motions to strike it, were overruled.

One of the primary issues for determination by the jury was whether or not plaintiffs had furnished defendant's cattle pasturage, feed, and care as agreed, so that defendant's cows would not be damaged by losing weight and having their milk dry up, and the suckling calves would not be stunted and damaged. A determination of that issue depended in large part upon the comparative condition of the cows and calves on or about June 18, 1956, when placed in plaintiffs' pasture, and on August 8, 1956, when defendant removed them from plaintiffs' pasture.

In 20 Am. Jur., Evidence, § 821, p. 691, citing authorities, it is said: "The admissibility of expert testimony to interpret, explain, or draw conclusions from photographs depends mainly upon whether such testimony will be of appreciable aid to the jury. If there is no need of expert testimony in order for the jury to understand and interpret the picture, such testimony will not be permitted. If, however, a photographic picture cannot be relied upon as proof in itself of the objects represented or the relative proportion of such objects except through evidence of personal knowledge or scientific experience accurately to demonstrate the facts sought to be established, testimony of experts in the interpretation of the photograph is admissible." We believe that the admission of such testimony of Guy Baker, about which defendant complained, was error,

which then presents the question of whether or not its admission was prejudicially erroneous. We conclude that it was not.

It will be noted at the outset that Guy Baker's testimony, about which defendant complains, was adduced by plaintiffs in rebuttal. In that connection, one Oliver L. Brittenham testified as a witness for defendant. He was a substantial rancher and cattleman of long experience, whose land adjoined defendant's, and who was familiar with defendant's cattle, having helped round them up when they were taken to plaintiffs' pasture. He testified that they were then in good shape and flesh. On cross-examination, and without objection, he was shown one of plaintiffs' photographs and asked about the condition of the calves shown therein. His answer was: "They don't look good to me." Also, on redirect, the witness was shown one such protograph, told to take a look at it, and asked to tell whether: "* * * the cattle are pretty well jammed together so you can't say much about them, aren't they?" His answer was: "They are." Further, defendant's counsel called particular attention of that witness to one white-necked calf shown in the photograph and asked: "* * * should calves like this * * * (indicating) have long hair on it in August on proper feed and with proper care?" His answer was: "If they had feed and care, they wouldn't; no."

Also, one Rich Peckham testified as a witness for defendant. He was another substantial rancher and cattleman of long experience. He was shown two of plaintiffs' photographs and, without objection, testified on cross-examination that the cows and calves shown therein didn't look good to him; they were shallow-bodied, pretty thin, and stunted. Also, defendant had taken three photographs of some of his cattle the evening of August 8, 1956, after they were removed from plaintiffs' pasture. Defendant had such photographs identified, and they were received in evidence without ob-

jection, whereupon defendant testified on redirect that such pictures represented the general condition of all of his cows that were brought home. Defendant's witness Peckham was also shown defendant's three photographs on redirect, and, without objection, was asked: "* * * if cows ought to look that way in August when they are on good substantial pasture?" His answer was: "They should not at the age these cows were." Under the facts and circumstances heretofore recited, we conclude that the admission of Guy Baker's testimony aforesaid was not prejudicially erroneous.

We turn then to the third assignment, relating to the giving and refusing to give certain instructions. In that connection, instruction No. 2 purportedly outlined the substance of plaintiffs' petition. Therein, however, no mention was made of that part which recited the kind of pasturage, feed, and care which plaintiffs agreed to furnish defendant's cattle. It simply recited, as an allegation, that: "Plaintiffs have fully performed all the covenants and conditions on their part; * * *."

Instruction No. 5 then told the jury, among other things, that the burden was on plaintiffs, before they could recover, to prove by a preponderance of the evidence: "1. That on or about the time and place stated and substantially in the manner alleged in their petition they entered into a contract with the defendant for the pasturing of defendant's stock, 100 cows, some with calves at side, and a herd bull, for the period of June 18, 1956 to October 1, 1956, at the agreed price of $500.00 per month. 2. That the defendant placed his cattle in plaintiffs' pasture and kept them there until August 8, 1956, at which time without just cause he removed said cattle. 3. * * * that plaintiffs provided the *proper and necessary care* for said cattle while in their pasture." (Italics supplied.) No suggestion was made that it was necessary for plaintiffs to prove by a preponderance of the evidence that they furnished the kind of pasturage,

feed, and care for defendant's cattle, which they contracted with defendant to furnish.

It has long been established as a general rule that a party who has failed or refused to perform the terms and conditions imposed upon him by a contract, or has not been ready, willing, and able to perform same, cannot recover for a breach thereof by the other party. Chicago, B. & Q. R. R. Co. v. Cochran, 42 Neb. 531, 60 N. W. 894; Hale v. Sheehan, 52 Neb. 184, 71 N. W. 1019. See, also, Oman v. City of Wayne, 152 Neb. 341, 40 N. W. 2d 916, citing Lang v. Todd, 148 Neb. 726, 28 N. W. 2d 434. In that connection, the foregoing rule could have been applied to plaintiffs' right of recovery on their petition or to defendant's right of recovery on his cross-petition, but the trial court erroneously failed and refused to give any instruction which correctly stated the rule and told the jury how to so apply it. In such respect, the last paragraph of defendant's tendered instruction No. 7, which was refused, correctly stated the rule, but the first paragraph thereof confined its application solely to plaintiffs' right of recovery on their petition.

Instruction No. 8-a did tell the jury that if it found, "* * * that the plaintiffs failed to furnish to the defendant the kind of pasture that they contracted to furnish and defendant's cattle was being damaged thereby, defendant had a legal right to come and get his cattle." However, instruction No. 7 given by the trial court told the jury: "* * * that a person who takes in cattle for pasturing is under a duty to exercise the degree of care which an ordinary prudent man would take or give to animals entrusted to him, and must furnish proper food and water." Such instruction was erroneous as misleading and conflicting. This is not a case wherein there was no express contract as to the kind of pasturage, feed, and care which was to be furnished defendant's cattle by plaintiffs, as in Calland v. Nichols, 30 Neb. 532, 46 N. W. 631. Also, it is not a case

wherein, without dispute, plaintiffs simply agreed to furnish defendant's cattle good pasturage, feed, and care, as in Darr v. Donovan, 73 Neb. 424, 102 N. W. 1012.

As we view it, the given instructions aforesaid were so misleading, confusing, and conflicting that the jury would not be able to understand or comprehend what plaintiffs were obliged to prove in order to recover from defendant. As recently as Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523, we said: " 'The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and, with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired.' Langdon v. Loup River Public Power District, 144 Neb. 325, 13 N. W. 2d 168. See, also, Barney v. Adcock, *supra*.

" 'Where an instruction assumes to define the whole law of the case but omits a material element therefrom, it is reversible error which may be relied upon although no proper instruction has been requested by the party seeking to take advantage of the defect.'

" 'An instruction which conflicts with propositions of law properly and correctly stated in another instruction in the same charge on a vital issue of fact, and tends to mislead or confuse the jury in deliberating on conflicting evidence, is erroneous and prejudicial.' Cover v. Platte Valley Public Power & Irr. Dist., 162 Neb. 146, 75 N. W. 2d 661. See, also, Brooks v. Thayer County, 126 Neb. 610, 254 N. W. 413.

" 'Where a party has produced proof tending to sustain his theory of the case, he is entitled to have such theory submitted to the jury by suitable instructions, without qualifying words calculated to mislead the jury into the belief that, although they may find the theory of such party to be true, they may return a verdict for

the opposing party.' Brownfield v. Union Pacific R. R. Co., 74 Neb. 440, 104 N. W. 876.

" 'An error in an instruction is not cured by the giving of other instructions, where such error consists, not of an omission of some material fact, but of an affirmative statement by the court which, when considered with the other instructions, tends to confuse the jury.' Wilch v. Western Asphalt Paving Corp., 124 Neb. 177, 245 N. W. 605."

In Barney v. Adcock, 162 Neb. 179, 75 N. W. 2d 683, this court said, citing numerous authorities: "A trial court may not make the success of a party to the case dependent upon a hypothesis foreign to the litigation. * * * Conflicting instructions are erroneous and they are prejudicial unless it is apparent from the record that the jury was not misled thereby because it is impossible to know which of the directions the jury followed. * * * The purpose of an instruction is to guide the jury in its deliberations and to aid it in rendering a correct verdict. Hence an instruction should be clear and concise and should not go beyond any issue or issues of fact in the case as made by the pleadings of the parties." See, also, Harsche v. Czyz, 157 Neb. 699, 61 N. W. 2d 265.

It is admittedly elementary that instructions must be construed together and considered as a whole to ascertain whether or not they are prejudicially erroneous, but such construction and consideration in the case at bar only makes the situation more conflicting, confusing, and erroneous. For example, instruction No. 6 told the jury that the burden was upon defendant, before he could recover on his cross-petition, to establish by a preponderance of the evidence: "1. That the pasture furnished by the plaintiffs for defendant's cattle was inferior to the pasturage agreed upon to be furnished by plaintiffs, and that defendant's cattle could not live and thrive upon said pasturage; and that by reason thereof the defendant sustained damages in loss

of weight of his cattle, and the amount thereof.

"2. And for the $500.00 first month's rent paid.

"Should you conclude from *all the evidence* and under these instructions that the defendant has established each and all of the above and foregoing propositions by a preponderance of the evidence, then your verdict should be for the defendant on his cross-petition for whatever amount he has established.

"Should you conclude from *all the evidence* and under these instructions that the defendant has failed to establish the above and foregoing propositions by a preponderance of the evidence, then your verdict should be for the plaintiffs on the defendant's cross-petition or counter-claim." (Italics supplied.)

Said instruction No. 6 was not prejudicially erroneous because it failed to give defendant the benefit of plaintiffs' evidence, if any, which tended to prove the allegations contained in defendant's answer and cross-petition as argued by defendant, because that instruction and several others as well could reasonably be construed to properly advise the jury that defendant was entitled to the benefit thereof.

However, instruction No. 6 was prejudicially erroneous because part 2 heretofore quoted was entirely unintelligible by jurors. In view of the fact that the judgment is reversed and the cause is remanded, we conclude that part 2 should not have been given in any event. In such respect, defendant's cross-petition sought recovery of damages from plaintiffs for breach of contract, and not for rescission thereof. Under the facts and circumstances appearing herein, the measure of defendant's damages, if any, would be what defendant's cattle were impaired and depreciated in value by plaintiffs' failure to perform as agreed. In other words, the measure of defendant's damages, if any, would be the difference between the value of defendant's cattle on August 8, 1956, and what their value would have been at that time had plaintiffs furnished the pasturage, feed,

and care which they contracted to furnish. The trial court did not so define the measure of defendant's damages in any instruction, and confused the jury in instructions Nos. 6, 8-b, and 10 with regard to the $500 advance monthly rent paid by defendant, which he was not entitled to recover under the facts and circumstances presented in this case. Defendant did not cite any authority and none has been found which would have sustained any recovery of the $500 aforesaid.

Also, contrary to defendant's contention, he would not be entitled, under the facts and circumstances appearing in this case, to mitigate plaintiffs' damages in the amount of $200 or any other amount alleged to have been received by plaintiffs for pasturage after October 1, 1956. Defendant has not cited any authority and we have found none which would sustain the allowance of such mitigation.

In that connection, instruction No. 6-a permitted the jury to mitigate plaintiffs' damages $400 allegedly received by plaintiffs for other pasturage after August 8, 1956, and prior to October 1, 1956, and the jury gave defendant credit therefor in its verdict, of which plaintiffs make no complaint here. However, since the judgment is reversed and the cause is remanded, it should be said that the question of the allowance of such credit was for the jury but such allowance was erroneously predicated upon a finding from a preponderance of the evidence that it would be necessary for plaintiffs to use pasture No. 1 a second time in pasturing defendant's cattle before October 1, 1956. On the other hand, instruction No. 9 was erroneous as entirely in conflict with instruction No. 6-a. In that regard, instruction No. 9 told the jury that if it found for plaintiffs, "* * * then their amount of recovery would be the balance of the money due under the contract, less a credit of $95.94."

Defendant also complained that instruction No. 8-c was erroneous. We do not agree. With regard thereto, it is sufficient to say that the giving of such instruc-

tion, under facts and circumstances comparable with those presented herein, was approved by this court in Loomer v. Thomas, 38 Neb. 277, 56 N. W. 973. See, also, Uhlig v. Barnum, 43 Neb. 584, 61 N. W. 749.

Other matters were presented and argued in the briefs, but they require no discussion or determination. For reasons heretofore stated, we conclude that the judgment of the trial court should be and hereby is reversed and the cause is remanded. All costs are taxed to plaintiffs.

REVERSED AND REMANDED.

SIMMONS, C. J., participating on briefs.