**North Platte SHERRILL, Appellant,**

v.

**ROYAL INDUSTRIES, INC., a corporation, and W. R. Grace & Co., a corporation, Appellees.**

No. 75–1038.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1975.

Decided Nov. 11, 1975.

David B. Smith, Lexington, Neb., for appellant.

Harold W. Kay, Milton C. Murphy, North Platte, Neb., for appellees.

Before HEANEY and STEPHENSON, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

STEPHENSON, Circuit Judge.

The central issue raised on this appeal is whether the jury instructions given by the district court[1] in this personal injury suit arising out of a farm machinery ac-

---

* The Honorable Talbot Smith, Senior District Judge for the Eastern District of Michigan, sitting by assignment.

1. The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

cident incorrectly stated the law of Nebraska regarding strict liability in tort and assumption of risk and, as a result, prejudicially affected the verdict. We hold that the instructions, taken as a whole, adequately set forth the applicable law and accordingly affirm the jury verdict.

Appellant Sherrill, a farmer, purchased a grain auger from appellee W. R. Grace & Co., a farm implement dealer, in November 1968. The auger was manufactured by appellee Royal Industries, Inc. Appellant assembled the auger himself following its purchase. On the date of the accident, October 28, 1969, he was using it to convey corn from his grain truck to his grain bin. At that time appellant Sherrill was 55 years old and had spent most of his adult life as a farmer. It is conceded that he was generally familiar with grain augers such as the one he purchased from appellees. Appellant had used or observed the use of a similar auger owned by his neighbors over a period of two to three years prior to the accident and had also used the auger in question before the accident.

According to Sherrill's testimony, he was working near the lower end of the auger regulating the flow of the corn from the grain truck into the "hopper" which he had rigged up for use in connection with the auger. For reasons that remain unknown to him, his clothing became caught in the rotating drive shaft and coupling mechanism which were located on the exterior of the auger. His clothing wound tightly around the shaft and was torn from his body.

In the process he suffered considerable personal injuries, including the severing of his left hand, the loss of skin from various parts of his body, and various bruises and lacerations.

Subsequently this diversity action was brought in Nebraska federal district court by Sherrill against the manufacturer and distributor of the auger. The case was tried to a jury and submitted on the single theory of strict liability in tort based upon the allegedly defective design of the grain auger. Defendants below alleged that Sherrill was guilty of assumption of risk and was thus barred from recovery. The jury returned a general verdict for the defendant. This appeal followed the district court's denial of Sherrill's motion for a new trial.

■ All of the issues raised by appellant Sherrill on this appeal relate to the instructions given to the jury by the district court.[2] It is alleged that the instruction on assumption of risk was incomplete and should have included further definitional language. In addition, appellant claims that the instructions defining and setting out the elements of strict liability contained language which went beyond the law of Nebraska and was prejudicial to plaintiff below. Finally, appellant asserts that the definition of the term "unreasonably dangerous" given in the instructions was inaccurate. Although certain of the instructions standing alone may appear to be incorrect or ambiguous, it is our view that, taken as a whole and in light of the evidence, they adequately set forth the applicable law and do not constitute reversible error.[3]

---

**2.** Appellees contend that appellant has waived the right to appeal a number of the issues raised herein. They assert that appellant did not renew some of his objections to the court's instructions in his motion for a new trial and thereby is barred from having those objections considered here. This argument is without merit. A motion for a new trial under Fed.R. Civ.P. 59 is not a prerequisite to an appeal. *J. Moore, Federal Practice* ¶ 59.04[11] (1974). Furthermore, virtually every issue raised on this appeal was the subject of an objection

which was renewed in the motion for a new trial.

**3.** Because we find that the instructions taken as a whole adequately set forth the applicable law, we need not consider appellant's claims of error based upon the trial court's failure to give his requested instructions. *Emery v. Northern Pacific Railroad Co.*, 407 F.2d 109, 112 & n. 3 (8th Cir. 1969); *Jones v. Consumers Cooperative Propane Co.*, 186 Neb. 629, 185 N.W.2d 458, 460 (1971).

■ The scope of our review in this case is well defined. As this court stated in *Gardner v. Meyers*, 491 F.2d 1184, 1188 (8th Cir. 1974), "[i]nstructions must be considered as a whole and particular instructions, and requests for instructions, are to be taken in the framework of the entire charge." Similarly, an error in any instruction considered in isolation may be cured by viewing the charge as a whole. *Smith v. Wire Rope Corp.*, 383 F.2d 186, 188 (8th Cir. 1967); *Jiffy Markets, Inc. v. Vogel*, 340 F.2d 495, 500 (8th Cir. 1965). Furthermore, this court will give "great weight" to the interpretations of state law reached by a trial judge who is familiar with local law. *Halvorsen v. Dunlap*, 495 F.2d 817, 821 (8th Cir. 1974); *Owens v. Childrens Memorial Hospital*, 480 F.2d 465, 467 (8th Cir. 1973); *Luke v. American Family Mutual Insurance Co.*, 476 F.2d 1015, 1019 (8th Cir.), *cert. denied*, 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 105 (1973). With these precepts in mind, we consider the allegations of instructional error made by appellant.

The first contention by appellant that we consider on this appeal is the adequacy of the assumption of risk definition given to the jury by the trial court. No complaint has been made with regard to the specific elements of assumption of risk as given.[4] The basic assertion of

error relates to the failure of the district court to additionally instruct the jury as requested by plaintiff that inadvertence, momentary inattention, diversion of attention, or involuntary slipping and falling do not constitute assumption of even the most obvious risk.[5]

■■ This argument is without merit. The instruction quite plainly stated that if it were proved that the plaintiff "knew and appreciated" the danger presented by the revolving shaft and yet voluntarily chose to encounter that danger, he assumed the risk of injury. This is an accurate statement of the Nebraska law. *Jensen v. Hawkins Construction Co.*, 193 Neb. 220, 226 N.W.2d 346, 350–51 (1975); *Jeffrey v. Retzlaff*, 187 Neb. 372, 191 N.W.2d 436, 437–38 (1971). The issue of assumption of risk was left to the jury in accordance with the Restatement (Second) of Torts § 496D, comment d (1965). The use of the assumption of risk instruction in the instant case and the failure to use appellant's requested instructions did not constitute prejudicial error.

Appellant's next contention is that the jury was misinstructed in Instruction No. 7 as to the issues that needed to be resolved in order to find the defendants or defendant liable for plaintiff's injuries.[6] The instruction under examination stated, in relevant part:

---

**4.** The primary assumption of risk instruction (No. 6) stated as follows:

You are instructed that in connection with the defense of "assumption of risk," the burden is upon each defendant to prove, by a preponderance of the evidence, each and all of the following propositions:
1. That the plaintiff knew and appreciated the danger;
2. That the plaintiff voluntarily or deliberately exposed himself to that danger; and
3. That as a proximate result of that danger, the injury to the plaintiff occurred.
If a defendant has failed to establish any or all of the above-numbered propositions by a preponderance of the evidence, you will disregard such defense as to that defendant.
If a defendant has established each of the above-numbered propositions by a prepon-

derance of the evidence, your verdict will be in favor of that defendant and against the plaintiff.

**5.** Plaintiff's testimony lends scant, if any, support for the theory that these matters were a factor in what occurred.

**6.** In Instruction No. 5 the plaintiff's burden of proof with respect to establishing liability on the part of the defendants was set out; i. e., placing on the market a defective product which reached plaintiff without substantial change; product may be unreasonably dangerous if a suitable warning not given; misuse of product by plaintiff may bar recovery; and defective product proximately caused injury. Instruction No. 6 set out defendants' burden on assumption of risk (n. 4, *supra*).

If you find that:

\* \* \* \* \* \*

3. Mr. Sherrill was unaware and had no reason to be aware of the claimed defect;

\* \* \* \* \* \*

You may then find the defendants or a defendant liable for the injuries of Mr. Sherrill.

It is asserted that subsection (3) generally and especially the phrase "had no reason to be aware" constituted prejudicial error. We disagree.

In *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971), the Nebraska Supreme Court adopted in substance section 402A of the Restatement (Second) of Torts. *Id.* at 606–07. In so doing, that court gave its tacit approval to a set of instructions which included a statement as to the plaintiff's elements of proof in a strict liability action. One of those elements of proof was that "plaintiff was unaware of the claimed defect." *Id.* at 607. The language from *Kohler* provided the basis for subsection (3) in the statement of issues. Appellant initially contends that the Nebraska Supreme Court in *Hawkins Construction Co. v. Matthews Co.*, 190 Neb. 546, 209 N.W.2d 643 (1973), reversed its endorsement of that particular instruction.

In *Hawkins* the court stated flatly, and somewhat parenthetically, that "traditional 'contributory negligence' \* \* is not a defense to a suit in strict tort." 209 N.W.2d at 655. In response to that declaration the editors of the *Nebraska Jury Instructions* suggested that "it would now apparently be error" to require the plaintiff to prove his unawareness of a defect. *Nebraska Jury Instructions* 11.20, Comment (1975 Supp.). Appellant thus concludes that reversible error resulted from the use of the "unaware" language in the instant case.

■ We agree with the proposition that a plaintiff in Nebraska after *Haw-*

*kins* cannot be made to bear the burden of proving, in effect, that he did not assume the risk. However, nothing in the *Hawkins* decision itself specifically repudiates the use of the "unaware" element from *Kohler*. Nor was the *Kohler* decision overruled. The Nebraska Supreme Court may well feel that the use of that phrase as an issue to be resolved in a strict liability case does not conflict with the affirmative defense of assumption of risk. In the absence of any compelling authority to the contrary, we defer to the district court's interpretation of current Nebraska law on that issue.

■ Furthermore, to the extent that the "unaware" element arguably suggests an improper shift of the burden of proof, we find no reversible error in its inclusion here when the instructions are viewed as a whole. As noted above, the assumption of risk instruction given here was in complete accord with Nebraska law. Thus, even if it were assumed that this one challenged element of the liability issue was technically incorrect after *Hawkins*, we feel that such error would be harmless at most and was sufficiently cured by the correct and specific assumption of risk instruction. We do not believe that the jury was confused or misled by the inclusion of this language. *See Bodtke v. Bratten*, 166 Neb. 36, 88 N.W.2d 159, 166 (1958).

■ Similarly, the addition of the phrase "had no reason to be aware" to the *Kohler* instruction does not change the result here. Appellant contends that this language erroneously and prejudicially injects an element of contributory negligence into the strict tort/assumption-of-risk framework. While it is true that the standard to be applied in such cases is based upon the actual knowledge of the plaintiff, we are equally mindful that

[T]he plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive. There are some risks as to which no

adult will be believed if he says that he did not know or understand them. * * * One who has spent a substantial time upon particular premises ordinarily would be found in fact to understand and appreciate the normal, ordinary risks of those premises * *.

Restatement (Second) of Torts § 496D, comment d (1965). In the instant case Sherrill denied that he was aware of the dangerous propensities of the revolving auger shaft. The jury, however, had the option of disbelieving that statement and in finding as a matter of fact that he was aware of the danger. The "had no reason to be aware" language merely articulates that fact-finding choice and is, therefore, not prejudicial error.

Furthermore, the record in this case is replete with evidence from which a jury could find that Sherrill was aware of the dangers involved in the use of the auger. This fact, coupled with the fact that a correct instruction was given on the elements of assumption of risk, effectively eliminates any possible argument that the jury used the "had no reason to be aware" language to find Sherrill guilty of contributory negligence. We are not cognizant of any Nebraska case law which requires us to reverse the district court's instruction on the elements of strict liability.

■ Appellant next contends that the trial court, in Instruction No. 8 defining the duty of the manufacturer-defendant, erred in instructing the jury in part that "[t]he law does not require that [the manufacturer] guard against injury from a danger which is obvious or which is discoverable by reasonable inspection * * *." Inasmuch as the obviousness of the defect is closely related to the "unreasonably dangerous" element of section 402A, we will discuss this alleged error below in connection with that topic.

With regard to the "reasonable inspection" referred to in this instruction, a careful reading of the instructions as a whole reveals that this term is not being used in an attempt to impose a duty of inspection upon the plaintiff. In a previous instruction (No. 5), to which no objection is made, the district court charged the jury that a manufacturer is liable for defects in a product which it places on the market "knowing that it is to be used without inspection for defects." See Kohler, supra, 191 N.W.2d, at 607. Instead this subsequent inspection language relates to the jury's function of evaluating Sherrill's testimony regarding his knowledge of the defect. He testified at trial that he assembled the auger by himself, including the rotating shaft. Thus the jury might well believe that his intimate familiarity with the equipment gave him actual knowledge of its characteristics despite his contentions to the contrary. The inspection here referred to Sherrill's actual knowledge, not a negligence standard of care. No prejudicial error resulted from the use of this language in the instruction.

■ The final error alleged to exist in the instructions given by the trial court pertains to the definition of the term "unreasonably dangerous." The challenged portion of the instruction stated:

An auger is unreasonably dangerous only if it is dangerous to an extent beyond that which would be contemplated by an ordinary user, with ordinary knowledge as to its inherent characteristics.

Appellant contends that this definition is contrary to established law. We disagree.

The Nebraska Supreme Court has not as yet defined the term "unreasonably dangerous" for use in connection with a strict liability theory. However, as noted above, that court in Hawkins and Kohler has generally endorsed Restatement (Second) of Torts § 402A. A comment to that section defines the term "unreasonably dangerous" in language that is virtually identical to that used by

the district court in this case.[7] Restatement (Second) of Torts § 402A, comment i (1965). In addition, this definition has been specifically adopted by a number of courts dealing with a broad range of products, including heavy machinery. *See, e. g., Hartman v. Miller Hydro Co.*, 499 F.2d 191 (10th Cir. 1974); *Jackson v. Coast Paint and Lacquer Co.*, 499 F.2d 809, 812 (9th Cir. 1974); *St. Louis-San Francisco Railway Co. v. Armco Steel Corp.*, 490 F.2d 367 (8th Cir.), *cert. denied*, 417 U.S. 969, 94 S.Ct. 3173, 41 L.Ed.2d 1140 (1974). *See generally* Annot., 54 A.L.R.3d 352, 362–64 (1973). No error was committed in giving to the jury this widely accepted definition of "unreasonably dangerous."

▮ Related to this argument is appellant's contention that the district court was incorrect in instructing the jury that a manufacturer has no duty to guard against injury from "obvious" dangers. In his view, reversible error was created by drawing a distinction between patent and latent defects.

Again we find that the Nebraska Supreme Court has not specifically ruled on this issue. Turning to the general body of law that has developed in connection with the doctrine of strict liability in tort, we note that the distinction drawn by the district court in this case is not without precedent. *See, e. g., Posey v. Clark Equipment Co.*, 409 F.2d 560, 562 (7th Cir.), *cert. denied*, 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969); *Bowman v. Kaufman*, 387 F.2d 582, 589–90 (2d Cir. 1967). *See generally Ward v. Hobart Mfg. Co.*, 450 F.2d 1176, 1186 & n. 36 (5th Cir. 1971); *Kerber v. American Machine & Foundry Co.*, 411 F.2d 419, 421 (8th Cir. 1969); Annot., 54 A.L. R.3d 352, 367–68 (1973). *But see Dorsey v. Yoder Co.*, 331 F.Supp. 753, 758–59 (E.D.Pa.1971).

We are convinced that the trial court reached an interpretation of the law on this issue which is not in conflict with the main body of Nebraska strict liability law. Appellant maintains that limiting recovery to those injuries which were the result of latent defects is out of step with current legal developments in this area. However, in the absence of authority to the contrary, it is not the duty of this court to instruct the Nebraska Supreme Court on the doctrinal path it should follow. We have simply concluded that the instruction on obvious defects in this case is a reasonable interpretation of Nebraska law that will not be set aside absent a showing that it is erroneous.

In summary, considering the uncertainty of the Nebraska law with respect to the disputed instructions,[8] the great weight we give to the trial judge's interpretation of state law, and the weakness of plaintiff's case, we are satisfied that error, if any existed, was not prejudicial and the judgment should be affirmed.

Affirmed.

7. In relevant part that comment states:

The rule stated in this Section applies only where the defective condition of the product makes it unreasonably dangerous to the user or consumer. * * * The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics.

8. *Nebraska Jury Instructions* 11.20 (1975 Supp.) offer no recommended instructions on *strict liability for the stated reason that the* law of Nebraska has not been developed with respect to several issues.