Williams v. Hines.

from the government.   The judgment of the district court
is therefore

AFFIRMED.

GEORGE B. WILLIAMS, ADMINISTRATOR, APPELLEE, V.
WALKER D. HINES, APPELLANT.

FILED JULY 19, 1922.   No. 2199'.'.

1.  **Negligence:** INJURY: PROXIMATE CAUSE.   "The proximate cause
    of an injury is that cause which, in the natural and continuous
    sequence, unaccompanied by any efficient intervening cause, pro-
    duces the injury, and without which the result would not have
    occurred." *Spratlen v. Ish*, 100 Neb. 844, followed.

2.  **Death:** PROXIMATE CAUSE.   Where an employee suffered an in-
    jury of a broken collar bone caused by the negligence of his em-
    ployer, and eight months thereafter died from bronchial pneu-
    monia, *held*, in an action for damages for wrongfully causing the
    death, that the evidence fails to show that the injury sustained
    was the proximate cause of the death.

APPEAL from the district court for Phelps county:
HARRY S. DUNGAN, JUDGE.   *Reversed and dismissed.*

*E. E. Whitted, P. E. Boslaugh* and *J. L. Rice,* for ap-
pellant.

*W. D. Oldham* and *S. A. Dravo, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN, ALDRICH,
DAY and FLANSBURG, JJ., REDICK, District Judge.

DAY, J.

This action was brought by the administrator of the es-
tate of Charlie Morton Veal against the director general
of railroads to recover damages sustained by the widow of
said Veal, whose death it is alleged was caused by the
negligent act of the defendant.   The trial resulted in a
verdict and judgment for the plaintiff for $7,000.   De-
fendant appeals.

It appears that, while Mr. Veal was employed as a brake-
man upon one of the interstate passenger trains of the

Chicago, Burlington & Quincy Railroad Company, he sustained a fracture of his collar bone and several minor bruises upon his head and body by the derailment of the train, the accident occurring on February 19, 1918, during the period the railroads were being operated under federal control. He died October 13, 1918, of what was diagnosed at the time as bronchial pneumonia.

It was the plaintiff's theory that the derailment of the train was caused by the negligence of the defendant, and that the proximate cause of deceased's death was the injuries he received by the derailment of the train. The answer denied the negligence, and specially denied that the death of deceased was in any wise attributable to the injuries he received in the accident.

A number of errors are assigned by the defendant, and argued in the brief, for a reversal of the judgment, but in the view we have taken of the evidence it seems unncessary to consider but one of them. In passing, we may observe, however, that we think it extremely doubtful whether the negligence charged in the petition was proved to be the cause of the derailment of the train. Assuming, however, that the defendant's negligence has been established, and that in consequence thereof plaintiff's decedent suffered a fracture of his collar bone, we come to a consideration of the question whether the negligence of the defendant was the proximate cause of deceased's death.

It is fundamental that a person is liable only for the proximate results of his negligent act. The rule of law is not difficult of statement, but in the affairs of life the relation of causes to their effects differ so widely that oft-times great difficulty arises in the application of the rule to specific cases. The term "proximate cause" has been defined by this court in *Spratlen v. Ish*, 100 Neb. 844, as follows: "The proximate cause of an injury is that cause which, in the natural and continuous sequence, unaccompanied by any efficient intervening cause, produces the injury, and without which the result would not have occurred." In that case the court quoted from *Chicago,*

*St. P., M. & O. R. Co., v. Elliott,* 55 Fed. 949, as follows:
"An injury that could not have been foreseen or reason-
ably anticipated as the probable result of the negligence
is not actionable, nor is an injury that is not the natural
consequence of the negligence complained of, and would
not have resulted from it, but for the interposition of
some new, independent cause, that could not have been
anticipated."

With this definition in mind, we proceed to examine the
facts as disclosed by the record. As before stated, by the
derailment of the train the plaintiff's decedent suffered a
fracture of his left clavicle. For this injury he was taken
to the hospital and treated in the usual and approved
method for the treatment of such an injury. The treat-
ment required him to lie on his back, with his left arm
at a right angle to his body, and bound in a rigid position
to prevent movement. The injury responded to the treat-
ment, and no unusual complications developed. His vital
organs were normal; no fever developed; and the action
of his lungs and heart were regular. On April 5 he was
discharged from the hospital, but was required to keep
his arm bandaged and report to the physicians from time
to time. After leaving the hospital and during the period
of his convalescence, he visited his friends and relatives
in Kansas and Colorado. On August 31 he was examined
by the company's physician, and pronounced fit to resume
his duties as a brakeman. On September 2 he resumed
his former employment, and continued to work every day,
except Sundays and September 18 and 19, until October
4, when he was suddenly taken ill while on duty, and died
October 13, of what was diagnosed at the time as bronchial
pneumonia. During the period he worked he performed
his duties as a brakeman as usual, the only difference ob-
served being that he seemed to favor his left arm in hand-
ling baggage and milk cans, it being a part of his work
to assist in such matters. On behalf of the plaintiff it
was shown that during the time he was unable to work,
and also after he resumed his employment, his appetite

was not as good as before the accident; he had lost considerable flesh, and was not as lively as before.

The great weight of the testimony is to the effect that there was no connection whatever in point of causation between the broken collar bone and the pneumonia which caused the death of the deceased some eight months after the accident. All of the physicians agree that the kind of pneumonia of which deceased died was a germ disease, and they also agree that it was not traumatic pneumonia, which sometimes develops within a few hours from the effects of a blow or injury. The testimony of the expert witnesses on behalf of the plaintiff upon the question of the connection between the broken collar bone and the pneumonia, viewed in the light of the direct and cross-examination, is so vague and conjectural as to amount to but little more than a mere guess. It fails to show that degree of certainty required in judicial proceedings that the pneumonia was the proximate result of the injury sustained by the deceased. An injury, in order to be the proximate cause, must be the thing that directly causes the subsequent disease, and not merely a condition which enables it to independently operate. Cases are readily to be found, some of which are cited by the plaintiff's counsel, where a physical injury has been held to be the proximate cause of a disease which later resulted in death; but an examination of the facts in the cited cases readily distinguishes them from the case at bar.

The principle here involved is discussed in *Long v. Omaha & C. B. Street R. Co.*, 108 Neb. 342, and *Cincinnati, N. O. & T. R. Co. v. Perkins' Admr.*, 177 Ky. 88.

As the evidence fails to show that the death was due to the injury, the judgment is reversed and the cause dismissed.

REVERSED AND DISMISSED.