FARLEY D. HARPER, APPELLANT, V. WAYNE YOUNG ET AL., APPELLEES.

298 N. W. 342

FILED MAY 23, 1941.   No. 31012.

*Dryden, Dryden & Jensen* and *T. M. Hewitt,* for appellant.

*Stanley A. Matzke, W. A. Stewart, Jr., Cook & Cook* and *Elbert H. Smith, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, MESSMORE and YEAGER, JJ., and CHAPPELL, District Judge.

CHAPPELL, District Judge.

The sole issue for decision is whether a jury verdict of $1,225.66 awarded plaintiff on his first cause of action for personal injuries suffered in an automobile accident is inadequate. Plaintiff appeals, contending for its inadequacy, first, because the trial court took from consideration of the jury the question of his alleged disability because of a coronary occlusion of the heart; second, that, even if such alleged disability was properly taken from the jury, the evidence still would require a reversal.

The petition charges defendants with concurrent negligence in two causes of action. The first cause of action prays damages for personal injuries; the second prays damages for his car. Defendants did not cross-petition, but each answered separately, denying their own negligence and charging the other defendants and plaintiff with concurrent negligence. There is no evidence supporting the charge that plaintiff was guilty of contributory negligence, and there is no complaint that the trial court did not present such an issue to the jury by appropriate instructions. Plaintiff was awarded a verdict on the second cause of action for all damages to his car. The parties all concede its correctness. None of the defendants cross-

appeals or denies liability by reason of the established negligence of defendant drivers, but contend that the damages awarded are adequate, and all ask affirmance.

The accident happened, injuring plaintiff, on August 12, 1938. He returned to his employment as a rural mail carrier out of Lexington, Nebraska, on February 19, 1939. On June 4, 1939, 9 months and 23 days after the accident, he suffered a coronary occlusion of the heart. The medical evidence is that, because of physical strain and worry, the accident might have contributed to it; it was a forerunner of it; probably precipitated it; could have been the cause; the chain of events made it so appear; it is possible; it might not have occurred otherwise; it might happen to any one in those years of life without having been in an accident; and that a coronary occlusion is a blocking of the arterial wall supplying the heart by foreign matter in the blood stream which could not have come from the injured parts of plaintiff's body. The causes of this disease are speculative in the medical field and yet to be certainly found. It is known that it usually occurs in men between the ages of 40 and 65. Plaintiff was then 55 years of age. It appears in infectuous diseases like pneumonia and typhoid or results from operative surgery, fractures where the marrow of the bone is involved, or arteriosclerosis; it is often found in the professional field where men are subjected to stress, strain, and worry, or burn the candle at both ends through the years, and it is often an inherited family weakness. There is evidence that plaintiff's father may have died from it at age 67, and that one brother now has heart trouble.

The rule is that damages which are uncertain, contingent, conjectural, or speculative, cannot be made the basis of a recovery, whether applied to the existence, nature, or proximate cause thereof. 17 C. J. 753; 15 Am. Jur. 409, sec. 19; *Williams v. Hines*, 109 Neb. 11, 189 N. W. 623. The mere fact that a certain disease might consistently arise from the injury is insufficient to show that it was caused thereby. "The evidence should so exclude other causes, and the cir-

cumstances should be such that a reasonable inference arises that the injury caused the disease." 17 C. J. 756. There must be competent evidence, and a preponderance thereof, that plaintiff's heart condition was the probable and reasonable result of the accident and injuries. 15 Am. Jur. 471, sec. 66. Evidence that it was possibly the result is not sufficient. *Omaha & R. V. R. Co. v. Brady,* 39 Neb. 27, 57 N. W. 767; 22 R. C. L. 150, sec. 33.

"Where from the undisputed facts the court is able to see that the injury is remote and not the proximate result of defendant's acts, the question is properly decided as one of law." 17 C. J. 1060. We have carefully read the evidence to determine the question, and conclude that the trial court properly excluded the matter of damages claimed by plaintiff because of the alleged coronary occlusion. In this connection we will not discuss instructions Nos. 5 and 10, given by the trial court, relating to the measure of damages, for the reason that, upon a new trial granted, the matter of coronary occlusion and alleged damages resulting must be excluded from the case by the trial court, and the same questions will not again require judicial solution.

The matter of inadequacy of the award still remains. We will not discuss the circumstances of the accident appearing in the evidence except to say that at the time of the accident plaintiff's car was standing still on the right side of the highway close to a mail box for delivery of United States mail, when, because of the concurrent negligence of defendant drivers, his car was struck from the rear and thrown approximately 100 feet forward and toward the ditch to the right. He thought that his injuries were not serious, although he immediately suffered very severe, sharp pains from the base of his skull to his shoulders. He drove a farmer's car back to Lexington on his mail route, and checked in at the post office. The pain continued, and about 5 p. m., the same day, he went to the hospital where he was examined by two physicians.

Evidence adduced for plaintiff is that X-ray examination

disclosed the first cervical vertebra of his neck thrown out of line by side force, and chip fractures of the fourth, fifth, sixth, and seventh cervical vertebræ of his neck resulting from his head being thrown back suddenly. The muscles and nerves of his neck, shoulders and arms were injured, causing spastic contraction and pain, aggravated by motion. A blood clot was removed from his left ear. He was placed in a bed in the hospital. A Thomas halter was put on his chin and neck, with a sash weight over the end of the bed. He remained in the hospital 15 days. After returning to his home he was in bed a few days. A brace was put on his head and neck, holding it immobile and rigid. He slept in the Thomas halter and wore the brace when up and around. These were so used most of the time until treatments by his physicians were concluded on February 11, 1939. On November 3, 1938, he went by train to the Mayo Clinic at Rochester, Minnesota, and stayed 14 days.

His undisputed hospital, medical and doctor bills were $475.30. On February 19, 1939, he returned to his work, a son driving the car and assisting him for a week or two. He lost 6 months and 7 days from his employment at $200 a month, a total of $1,246.66. There is no evidence controverting evidence adduced for plaintiff that he was totally disabled during this period. The undisputed total hospital, doctor and medical bills, and loss of time, exclusive of the claimed damages for coronary occlusion, are $1,721.96, a sum $496.30 more than the verdict awarded. This fails to take into consideration or allow any recovery for pain and suffering past and future, or his physical injuries and disabilities whether temporary or permanent, and we are not unmindful that there is no issue of contributory negligence.

The evidence is undisputed that, before the accident, plaintiff was a strong, healthy, active man who, for six or seven years, had lost no time from his employment for any reason, and in 22 years of employment had been on sick leave only once, 20 years ago when his ankle was in-

jured in a minor accident. The postmaster, where he was employed, testified that, when plaintiff returned for work, he did not look like the same man; that he was not able to perform his duties as before, and apparently had to drive himself all the time. Evidence adduced for plaintiff is that he suffered serious and permanent injuries and damages to his head, neck, left shoulder, arm and hand; that the tissues are atrophied, and there is a drawing of the cords and ligaments, resulting in stiffness and limitation of movement; that he suffered a loss of hearing in the left ear; and that he has in the past, does now, and will in the future, suffer pain and disability.

Physicians who testified for defendants deny that plaintiff suffered chip fractures of the vertebræ, but admit that plaintiff at the time of the trial, the latter part of March, 1940, had limitation of movement of the head and neck; that he was unable to raise his left arm higher than the level of his shoulder; and when the doctor raised it over plaintiff's head, plaintiff could not hold it up in that position; that he had some injuries to his neck, shoulder and arm from the accident, in the muscles, tendons and strain of ligaments, and there is still some pain and tenderness there. They testify that he had a slight Babinski, indicating something wrong in the central nervous system which might be any place deep in the spinal cord including the first, fourth, fifth, sixth, and seventh cervical vertebræ of the neck; that it was problematical how long it would take plaintiff to recover because there was osteoarthritis present in the vertebræ with inflammation elsewhere and it was not possible to know how much disability was the result of the injury.

We find in the evidence continuous reference to, and inquiry about, the fact that plaintiff in eight years could retire on a pension for life; that, if he had applied to the federal government, he could have obtained compensation from the government for his injuries; that he had earned through the years up to the time of the accident 126 days sick leave at the rate of 10 days a year and 27 days vaca-

tion at the rate of 15 days a year, and, because thereof, was paid his salary of $200 a month by the government from the time of the accident until the expiration thereof. This evidence had no bearing on any fact in issue; was not admissible upon any theory, and clearly prejudicial to plaintiff's rights. 15 Am. Jur. 615, sec. 198; 1 Jones, Evidence (4th ed.) sec. 161. While some of it was received without objection and, ordinarily, any error would be thereby waived, the rule does not apply to evidence having no bearing on any fact in issue, and the jury should be instructed to disregard it. "Where evidence, although admitted without objection, is insufficient to sustain the hypothesis set out in an instruction, the giving of the instruction is error." 64 C. J. 227. "Even though a party fails to object to evidence admitted, he has the right to have the court declare in its instructions the correct rule on the matter to which the evidence relates." 64 C. J. 228. The trial court gave the jury no instruction to disregard the evidence that plaintiff could retire on a pension in eight years or that he could have obtained compensation from the government for his injuries, had he applied therefor. We find in instruction No. 10: "You will disregard the fact that the plaintiff could draw compensation from his employer during such accumulated sick leave and vacation days except that such fact may shed light upon the question of whether or not it was reasonably necessary for plaintiff to remain away from work until February 19, 1939." The introduction of this evidence and the failure of the trial court to instruct the jury to disregard it undoubtedly resulted in a verdict not only grossly inadequate under the undisputed evidence, but a verdict rendered under the influence of passion and prejudice. Under such circumstances the rule is that, "When the amount of damages allowed by a jury is clearly inadequate under the evidence in the case, it is error for the trial court to refuse to set aside such verdict." *Dolen v. Beatrice Restaurant Co.*, 137 Neb. 247, 289 N. W. 336. See 15 Am. Jur. 664.

When error exists as to only one or more issues and the

judgment is in other respects free from error, and it is clear that no injustice will result from so doing, the reviewing court may, when remanding the cause for a new trial, limit the new trial to the issues affected by the error whenever these issues are entirely distinct and separable from matters involved in other issues and the trial can be had without danger of complication with other matters. The most frequent application of this rule is found in damage actions where the error affects only the assessment of the damages. 3 Am. Jur. 724, sec. 1226. See, also, *Yazoo & M. V. R. Co. v. Scott,* 108 Miss. 871, 67 So. 491, L. R. A. 1915E, 239, and notes. We conclude that the case at bar comes within the rule, and the conclusion is supported by comparable precedent of this court. *Kuhns v. Live Stock Nat. Bank,* 138 Neb. 797, 295 N. W. 818; *Netusil v. Novak,* 120 Neb. 751, 235 N. W. 335; *Porter v. Sherman County Banking Co.,* 40 Neb. 274, 58 N. W. 721.

Therefore, the judgment is reversed and the cause is remanded for a new trial to a jury solely upon the issue of the amount of damages recoverable by plaintiff upon his first cause of action.

REVERSED.