BURDETTE S. JOHNSEN, APPELLANT, V. HARRY A. TAYLOR, APPELLEE.

99 N. W. 2d 254

Filed November 20, 1959. No. 34583.

*Nate C. Holman* and *Chambers, Holland, Dudgeon & Hastings,* for appellant.

*Cline, Williams, Wright & Johnson,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

BOSLAUGH, J.

Appellant seeks damages for an injury which he claims he sustained by the collision of an automobile owned and operated by him and an automobile owned and operated by appellee, the proximate cause of which he asserts was the negligence of appellee.

The occurrence which caused this litigation was described by appellant at the trial in this manner: He was traveling west on the outside or north lane of O Street between Eleventh and Tenth Streets in Lincoln in his automobile, a 1951 Imperial Chrysler, about 11 o'clock in the forenoon of April 3, 1956, at a speed of from 20 to 25 miles per hour. Appellee was operating his automobile at that time and place, traveling west in the lane immediately north of the center line of O Street about 18 or 24 feet ahead of and to the left of appellant. The automobiles were traveling at about the same speed and when they had reached about the center of the block appellee turned his automobile to the right into and across the north lane in front of appellant. Appellant applied the brakes of his automobile when he saw appellee turn to the north but appellant could not stop and he said he had to hit the automobile of appellee. Appellee was headed north and west about halfway into a parking stall on the north side of O Street at the time the automobiles made contact. Appellant did not get out of his automobile at the place of the collision

but he estimated he slid his wheels 6 or 8 feet. The left part of the front bumper of the automobile of appellant struck the right rear corner or end of the bumper of the automobile of appellee. The bumpers did not completely meet and the one on the automobile of appellant went over the bumper on the automobile of appellee and reached its right rear fender. Appellant was forced up over the steering wheel of his automobile. He was shaken and the front of him was "punched," he said. He then thought he had sustained no injury. Appellee got out of his automobile, looked at its rear, asked appellant if he was all right, and appellant said he was. Appellant backed up his automobile to let appellee back from the parking into the north lane and proceed to the west on O Street which he did to Tenth Street. The glass in one of appellant's directional lights was cracked, the fender and bumper were marred, and the horn on his automobile did not sound after the collision. Appellant remained in his automobile at the scene of the collision and he drove it from there to Ninth Street and to the Annex Garage.

A motorist who was traveling west on the inside lane of O Street at about the time and place of the accident involved in this case testified that appellant at that time was traveling in the outside lane of the street. The witness saw a car preceding him turn from the inside lane to the right into and across the outside lane and into a parking spot. He did not clearly see what was going on but he heard a screeching noise and saw dust in the air which he believed was from under automobile fenders caused by an abrupt stop. The witness did not stop but while he was proceeding west he saw the automobile of the motorist who had turned to the right and the automobile of appellant come together. He said he did not know anyone was injured; the collision did not look that serious to him.

Appellee, a physician in Lincoln for more than 40 years, while a witness related in substance the following

concerning the accident: He was in the outside lane going west on O Street on which there were diagonal parking stalls. He turned his automobile to the right immediately east of the alley in the block north of O Street and between Tenth and Eleventh Streets. The rear lights of his automobile were operating, warning that he was decreasing his speed and was going to stop. He gave no signal for a right-hand turn. He applied the brakes to retard the speed of his automobile and immediately he felt a slight impact on his rear bumper. The participants in the collision examined the automobiles for possible damage. They found none. Appellant stated that he was not injured and he gave no indications of injury. He walked toward and to appellee after the collision and following their conversation he walked naturally away from where they had been standing. Appellee said the impact of the automobiles was very slight. It did not jar or affect him in any way and there was no damage to his automobile.

Appellant testified that when he stepped out of his automobile at the Annex Garage, where he drove after the collision, he about collapsed. However, he walked from there to his place of business, a distance of three-fourths of a block, where he remained for an undisclosed period of time. He told his employees he was hurt. He did not claim that he made a more definite statement on that subject. He then went to the police station, made a report of the collision, and thereafter went to his home. He considered the collision a minor accident with no injuries involved until he was in the Annex Garage and alighted from his automobile. When he was asked what made him think he had been injured he said it was pain in his lower back and right leg in the same area in which he had suffered pain as early as the year 1954. He first said he also had a movement of his head "back and forth like such (indicating)" after he got to his place of business and sat down there but this was not true in the Annex Garage. Later he said he

noticed the described movement of his head at the garage. The pain and the movement of his head which he described were the only things he experienced which caused him to believe he had been injured in the collision of the automobiles. In a deposition of appellant taken a considerable period before the trial of the case he testified that he told appellee at the scene of the accident that he, appellant, thought he was badly hurt. He also testified that the only unusual thing that appellant experienced when he was in the Annex Garage and got on his feet was that he developed a terrific pain in his stomach which continued for several days. When appellant reached his home on the day of the accident he went to bed and remained there until the following morning. The pain in the lower back area was more severe and in the afternoon of that day he consulted Dr. J. E. M. Thomson at his office. He examined appellant and gave him medical management, tablets for discomfort, and a local anesthetic injection into his back, and applied strapping to his back.

Appellant had been afflicted with a low back pain from somewhere in the winter months of 1953 and 1954. It came on gradually, became more severe, and by February 1956, the pain had extended to and radiated into his right leg. The lower back pain reached such severity that appellant developed numbness in the leg. He had the experience of attempting to get out of bed in the morning and being unable to stand. Appellant consulted Dr. Ferciot, an orthopedist of Lincoln and a senior consulting orthopedist at the Veterans Administration Hospitals in Lincoln and Grand Island, on March 1 and March 4, 1954, concerning soreness and stiffness in his lower back and soreness in his legs. On March 1, 1954, X-rays were made and the examination of appellant was completed on March 4, 1954. The diagnosis was a weakness of the lumbosacral part of his back with what is known as spondylothesis, which is an incomplete fusion of one of the side processes of the fifth lumbar vertebra.

Both processes in this instance were a peculiarity formation in which the pedicle had failed to unite to the vertebral body. The doctor testified that it was an accepted conclusion that spondylothesis is either a peculiarity of congenital origin or results from something that happens very early in life.

The doctor next saw appellant professionally February 6, 1956. He was then complaining of persistent low backache with considerable discomfort on his right side. He complained bitterly that his condition was bothering him and interfering with his ability to perform his work. An examination was had of appellant with the aid of X-ray rechecks then made which were compared with the films made in 1954. There was very slight change in position except that there was evidence of first degree spondylolisthesis with some early shift of the bony structures and chronic strain. Spondylolisthesis was defined by the witness as the slipping of one vertebra forward on another occasioned by lack of bony stability. The doctor recommended further study of the condition and appellant entered the Veterans Hospital at Lincoln. During his hospitalization the status of Dr. Ferciot was that of a consultant for the hospital and not as the direct physician of the appellant. There was an operation performed on the back of appellant at that hospital by doctors other than Dr. Ferciot on March 14, 1956. The operation was a laminectomy or decompression operation sometimes referred to as removal of the neural arch or as an unroofing procedure. Its purpose was to relieve pressure on the structure in the lower back by removing the loose portion of bone and any fibrous tissue which overlay the roots of the spinal cord at the lumbar sacral level. The appellant had a loose neural arch at the bottom of the spine and this was a factor considered by the doctor in making a diagnosis of spondylolisthesis. The instability of the joints predisposed or made more probable strain to the ligaments and pressure on the nerves. There are different permis-

sible procedures for attempting to correct the condition from which appellant was suffering such as the operation which was accomplished, fusion, or both such operations. There are uncertainties concerning the result of any of these. The simplest of them from the standpoint of the patient is the one which was performed because of the shorter period of convalescence; and if the desired result is not obtained, a fusion operation is available and is sometimes necessary to eliminate the pain suffered by the patient. That was true in the instance of appellant. He had a laminectomy and two fusion operations before he secured relief from his affliction. If conservative treatment in such a condition does not bring relief to the patient, the most desirable procedure from the standpoint of the phyisician is generally the fusion operation.

Dr. Ferciot was consulted again by appellant on April 5, 1956, the second day after the accident. Appellant told the doctor that he applied the brakes on his automobile suddenly and that he had a severe jolting injury. The doctor said that the operative scar of appellant was not essentially different than he would expect to find after that recent an operation (March 14, 1956). There was some puffiness of the upper part of the incision and complaint of tenderness but that, said the doctor, was a common finding at that stage and may often be seen as there is often local swelling and tenderness and sometimes discoloration following an operation of the type appellant had. There was a deep approach to the spine and considerable tenderness could be expected so soon after such an operation. The doctor would only say the accident may have been an aggravating factor in the condition of appellant if, as he stated, he sustained a severe jolting injury and if there was an onset of symptoms following that, but the doctor also said that the symptoms of appellant following the accident may have been normal manifestations which follow in other cases where no accident is involved and where it is necessary to subse-

quently have fusion procedure following a decompression operation and that could have been the case with appellant. The X-rays taken on April 4, 1956, the day following the accident, were compared with the films made February 6, 1956, and no evidence was found of change except that the lamina had been removed at the fifth lumbar vertebral level. The spondylothesis of appellant was the same after the accident as it was before except the neural arch had been removed in the operation of March 14, 1956. The statement in the notes made by the doctor that considering the history furnished, it would appear the soreness in the low back was made worse following the accident reported was based upon the statement of appellant that he suffered a severe jolting injury in the accident. In any event the doctor concluded and testified that he knew of no way in which one could evaluate the degree of aggravation which any injury of the accident could have caused.

Dr. Getscher, an orthopedist of Lincoln, first saw appellant April 4, 1958, 2 years and 1 day after the date of the accident and more than 2 years after the first operation performed on the back of appellant. It was then that he first consulted Dr. Getscher professionally. The doctor was told by appellant that in the winter months of 1953 and 1954 he had pain in his low back and it became more severe for which he had conservative treatment but the pain continued and in February of 1956 the pain had extended into his right leg to the degree that it developed numbness in the leg and that he experienced such a condition that on an occasion when he was attempting to get out of bed he was unable to stand. He was hospitalized February 28, 1956, and in March of that year the operation occurred in which the arch of the fifth lumbar vertebra was removed. Appellant gave the doctor a history of the accident of April 3, 1956, and in that connection he said he was thrown upward and forward over the steering wheel and had immediate pain in the lower back which radiated up

the back and into his neck. He was able to get out of his automobile and walk around but when he put weight on the right leg there was a severe, sharp, shooting pain which extended from the lower back down into the leg. On August 6, 1956, a spinal fusion operation was done. It did not accomplish what was intended and appellant experienced no relief from the persistent severe pain in his back and leg. Dr. Getscher advised a reoperation on the lower back and a regrafting of the area to provide solidity and stability therein. The doctor found that appellant had a spondylothesis which had probably developed as he grew from birth. This condition antedated the accident of April 3, 1956, mentioned in the history given by appellant. The second fusion operation was performed on the back of appellant by Dr. Getscher June 13, 1958.

Dr. Getscher, on the basis of assumptions expressed in a hypothetical question propounded to him, in opposition to proper objection, was permitted to and did express an opinion that there had been definite aggravation of the previous condition of appellant. The question on which the expressed opinion of the doctor was based included an assumption that appellant made a normal recovery from the laminectomy and an assumption that the accident caused the appellant to be thrown up forward and over the steering wheel at which time he noted immediate pain in the lower back. The doctor also stated his opinion, over proper objection, that sufficient damage to the area previously described in the lower back of appellant occurred from the accident in the form of tearing of ligaments and general strain to convert a non-painful condition to a painful condition that persisted in spite of treatment that was given. The doctor testified that it was his opinion that appellant would have a restriction of function the rest of his life that would impair his ability to work of about 10 to 15 percent of the body as a whole but he also said that the estimated permanent disability of which he spoke resulted from

all causes including the spondylothesis, the spondylolisthesis, and the surgical operations: "As a result of everything that has happened up until today * * *." He did not attempt to say what if any permanent disability was caused appellant by the accident of April 3, 1956. He testified that the opinion expressed by him necessarily took into consideration the history given him by appellant and the assumptions stated in the hypothetical question; that any variance by either of these from the actual facts would affect his opinion; and that if what was told him or if what he was asked to assume was materially incorrect, his opinion could be different or would be changed.

The gist of the case pleaded by appellant was negligence by appellee proximately causing the collision of the automobiles of the parties, injury thereby inflicted upon appellant from which he was damaged, and the quantum thereof. The defenses interposed by appellee were substantially a traverse of the claims of appellant and a plea of his contributory negligence. The district court at the close of all the evidence, on motion of appellee, found that the evidence was insufficient to sustain a verdict that the negligence of appellee caused appellant injury and damages and that any finding of damages in favor of appellant would be based on conjecture and speculation. The trial court discharged the jury and dismissed the case. A motion for a new trial was denied and this appeal is from that action of the trial court.

The injury received by appellant in the collision, as related in his petition, is that he was thrown forward against the steering wheel of his automobile, resulting in great pain, tearing loose a wound of a surgical operation to his back from which he was recovering, and resulting in internal bleeding and injury. The evidence is conclusive that the surgical wound on the back of appellant was not disturbed or affected by the accident. The record is silent as to any internal bleeding of appellant at any time. Appellant presented his case at the trial

substantially on the basis that the collision aggravated the condition of his back. The elements of the case of appellant were negligence of appellee, injury to appellant proximately caused thereby, the extent of the injury, and the damages resulting therefrom. The burden was on appellant to establish each of the elements by the weight of the evidence as a prerequisite of any recovery in the action. The burden on appellant was made difficult because of the congenital affliction he suffered and which was present long prior to and at the time of the accident. Appellant uniformly spoke of the pain and discomfort which he experienced as being in the area of his low back, where he had the defective fifth vertebra, and extending from there into his right leg.

In Borcherding v. Eklund, 156 Neb. 196, 55 N. W. 2d 643, this court said: "In an action of this type the burden is on the one seeking to recover to establish by a preponderance of the evidence that the other party is guilty of one or more of the alleged acts of negligence, that if found guilty thereof that such negligence was a proximate cause of the accident, and that damages were caused as a result together with the extent thereof. These are the issues and the court should properly instruct in regard thereto."

Restatement, Torts, § 912, p. 574, states: "A person to whom another has tortiously caused harm is entitled to compensatory damages therefor if, but only if, he establishes by proof the extent of such harm and the amount of money representing adequate compensation with such certainty as the nature of the tort and the circumstances permit." In Comment a appears the following: "Where a person seeks to recover damages for a particular harm which he claims has resulted to his person or to a tangible thing belonging to him, he has the burden of proving that the other has invaded a legally protected interest of his, that he has suffered such harm and that the act of the other was a legal cause of such harm. Thus where a person has been

wounded by another and subsequently blood poisoning develops in any portion of his body, he has the burden of showing that it is more probable than not that the initial wrongful contact was a substantial factor in producing it. * * * In all of such cases the recovery of damages for a particular harm is dependent upon proof that such harm occurred as the result of the tortious conduct and normally the plaintiff can recover damages therefor only by proving this with the same degree of certainty as that required in proving the existence of the cause of action." See, also, Wylie v. Czapla, 168 Neb. 646, 97 N. W. 2d 255; 15 Am. Jur., Damages, § 329, p. 768.

The district court is required to refrain from submitting to a jury the matter of damages and to decide the case as a matter of law if the evidence of claimant fails to establish that he has sustained an injury or fails to establish the extent of the injury he claims was inflicted upon him so that a jury cannot determine damages except by indulging in speculation and conjecture. In Harper v. Young, 139 Neb. 624, 298 N. W. 342, the plaintiff experienced an automobile accident. He, after a considerable period, returned to and pursued his employment. More than 9 months after the accident he was afflicted with a coronary occlusion of the heart. There was medical evidence that because of physical strain and worry the accident might have contributed to it; probably precipitated it; could have been the cause; the chain of events made it so appear; it might not have occurred otherwise; or it might happen to anyone in those years of life without having been in an accident. The court therein said: "The mere fact that a certain disease might consistently arise from the injury is insufficient to show that it was caused thereby. * * * There must be competent evidence, and a preponderance thereof, that plaintiff's heart condition was the probable and reasonable result of the accident and injuries. * * * Evidence that it was possibly the result is

not sufficient. * * * 'Where from the undisputed facts the court is able to see that the injury is remote and not the proximate result of defendant's acts, the question is properly decided as one of law.' 17 C. J. 1060. We have carefully read the evidence to determine the question, and conclude that the trial court properly excluded the matter of damages claimed by plaintiff because of the alleged coronary occlusion."

Wylie v. Czapla, *supra,* states: "As stated in Oleck, Damages to Persons and Property, § 319, p. 739, citing authorities: 'The party who claims pecuniary damages has the burden of proving both that they were the result of the wrong done by the other party, and their amount. * * * But ordinarily the claimant must prove his damages by presenting competent evidence which satisfies the applicable measure of damages, and from which the amount of the damages can be computed.'" See, also, Schneider v. Daily, 148 Neb. 413, 27 N. W. 2d 550. What is said above is in harmony with the doctrine that in each case before the evidence is submitted to the jury there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence but whether there is any evidence upon which the jury can find a verdict for the party producing it, upon whom the burden of proof is imposed. Christ v. Nelson, 167 Neb. 799, 95 N. W. 2d 128. A mere scintilla of evidence is not enough to require the submission of an issue to the jury. It is the duty of a trial court to direct a verdict where the evidence is undisputed or where the evidence, though conflicting, is so conclusive that it is insufficient to sustain a verdict and judgment. Fairmont Creamery Co. v. Thompson, 139 Neb. 677, 298 N. W. 551; Edgar v. Omaha Public Power Dist., 166 Neb. 452, 89 N. W. 2d 238.

The evidence of damages is required to be direct and certain. Proof that damage might or could have been caused or was probably caused by the accident is not sufficient to sustain a verdict for a claimant. Such evi-

dence is not of the quality required to satisfy the burden of a claimant to establish by a preponderance of evidence an injury and the extent thereof.

Bittler v. Terri Lee, Inc., 163 Neb. 833, 81 N. W. 2d 318, declares: "Damages which are uncertain, conjectural, or speculative as to the existence, nature, or proximate cause thereof are not the basis of a recovery." See, also, Harper v. Young, *supra;* Ricenbaw v. Kraus, 157 Neb. 723, 61 N. W. 2d 350; O'Hara v. Frederickson Building Corp., 166 Neb. 206, 88 N. W. 2d 643; Wylie v. Czapla, *supra.*

Welstead v. Ryan Constr. Co., 160 Neb. 87, 69 N. W. 2d 308, states: "Damages for permanent injuries cannot be based upon mere speculation, probability, or uncertainty, but must be based upon competent evidence that permanent damages, clearly shown, are reasonably certain as a proximate result of the injury."

In Burkamp v. Roberts Sanitary Dairy, 117 Neb. 60, 219 N. W. 805, this court said: "An instruction is erroneous which tells the jury that, in fixing plaintiff's damages in a personal injury action, they may consider the pain and suffering which plaintiff 'will probably suffer in the future;' only such pain and suffering as the evidence shows with reasonable certainty plaintiff will experience in the future may be considered by the jury." See, also, Borcherding v. Eklund, *supra;* Jacobsen v. Poland, 163 Neb. 590, 80 N. W. 2d 891.

The problem of whether or not appellant was caused any injury by the accident of April 3, 1956, should be considered with his established previous condition. He had a congenital or early developmental condition of the low back known as spondylothesis and later spondylolisthesis which caused him pain and difficulty in the low back and legs and especially in his right leg, from early in 1954. He was in the Veterans Hospital about 4 weeks before the accident. A spinal fusion before the accident was recommended but the less severe surgical procedure of a laminectomy, a permissible one which

sometimes furnishes good results, was decided on because of the shorter period of convalescence. It was performed less than 3 weeks before the accident. Appellant was then recovering from the operation which was normal because within that time some degree of residual soreness would be anticipated. Dr. Ferciot said it was a little more than 2½ weeks after surgery when the accident happened and the back of the patient was expected to be pretty sore. Appellant considered the collision of the automobiles a minor accident, without injury, until he afterwards alighted from his car at the Annex Garage. There was no physical or objective evidence or symptom of injury to appellant. The only mention of an immediate onset of pain in the back of appellant appears in the history which it is claimed he gave Dr. Getscher 2 years after the accident. The statement in the history that appellant was thrown over the steering wheel and that he had immediate pain in the lower back was self-serving and its admission was for the limited purpose of showing what the doctor relied upon in giving his conclusions and his testimony. It was not evidence of what was the fact and in any event it could not disprove the testimony of appellant that he experienced no pain until he got out of his automobile at the Annex Garage and that he then had pain in his back and leg in the same area where the pain originated in early 1954. The limited time which elapsed between the accident and the pain he said he experienced in the same area where it originated early in 1954 and persisted thereafter is the only fact which might indicate any connection between the accident and the pain at the garage but time element alone is not a valid basis for a finding of causal connection between the injury or disability and his accident.

In Hahl v. Heyne, 156 Neb. 599, 57 N. W. 2d 137, the court said: "We do not think the plaintiff established that her left leg was paralyzed as a result of the fall. * * * There is no evidence of objective symptoms of an

injury. In fact there is no evidence of any connection between the fall and the injuries sustained, other than the time element involved. The most that the medical testimony shows is that the accident possibly contributed to the injury, although it probably did not."

It is said in Feagins v. Carver, 162 Neb. 116, 75 N. W. 2d 379: "This record is not convincing that plaintiff's right foot ever slipped, but assuming for purpose of argument only that it did, the evidence fails to establish any causal connection between such slip and plaintiff's claimed disability."

The circumstances of this case as recited in the foregoing were such that a solution of the problem whether or not there was a causal connection between the physical condition of appellant and the accident was not within the competency of laymen but was a question with respect to which only a medical expert could form a judgment or express an intelligent opinion. Dr. Ferciot, an orthopedist of 25 years' experience, testified that he was told by appellant that he had a severe jolting injury in the accident and an onset of symptoms. The doctor was asked if it would be difficult to make a direct relationship of the accident and the subsequent fusion operation experienced by appellant and his answer was that the question posed a very difficult problem which he could not answer with any authority. He then added that from the history he obtained he would have to conclude that the accident "* * * may have been an aggravating factor." He said that was based upon a history that appellant experienced a severe jolting injury and an onset of symptoms. The witness also testified that the symptoms of appellant following the accident may have been a normal manifestation which followed in other cases where no accident is involved and where it is necessary to subsequently have a fusion procedure following a decompression operation and that that could have been the case with appellant. The doctor concluded and testified that he knew of no way

in which one could evaluate the degree of aggravation which any injury of the accident could have caused. The record contains no evidence that appellant suffered a severe jolting injury in the accident, that any symptoms of injury were immediately manifested, or that any physical or objective symptoms of injury to appellant were found by either of the two doctors who examined him, one the day following the accident and the other the second day thereafter.

Dr. Getscher, an orthopedist, testified in answer to a hypothetical question that his opinion was that there had been by the accident definite aggravation caused to the previous condition of appellant as it was before the accident. The question assumed as a fact that at the time of the accident appellant experienced immediate pain in his lower back. The witness stated the opinion expressed by him was based upon the history given him and the assumptions of the question and any variance of actual fact from these would affect and could change his opinion. The history given the doctor by appellant included a statement that he had immediate pain in the lower back at the accident and that it radiated up the back and into the neck. The witness also stated his opinion that sufficient damage to the area described in the lower back of appellant occurred from the accident in the form of tearing of ligaments and general strain to convert a nonpainful condition to a painful condition that persisted in spite of given treatment.

The record yields no evidence that appellant experienced pain at the time of the accident as assumed in the hypothetical question or that any pain that then developed in the lower back radiated up the back and into the neck as stated in the history given the doctor on which he relied and based his opinion expressed in his answers. The hypothesis and history are contradicted by the repeated evidence of appellant that he experienced no pain and no indication of injury at the time

of the accident and that the pain thereafter was in the same area of the back and in the leg where pain originated early in 1954. Likewise there is an entire absence from the record of any proof that there was at the time of the accident any tearing of ligaments at any place in the body of appellant or any general strain. The witness who assumed this did not see appellant until more than 2 years after the accident. He made no mention in his findings of any such conditions and any assumption to that effect is directly contradicted by the testimony of appellant. He was examined by an orthopedist the day after the accident, by another orthopedist the second day thereafter, and by other doctors in the immediate months after the accident. Appellant was a patient at the Veterans Hospital at the time of the accident but was on leave granted by the hospital for the period of March 30 to April 6, 1956. He was seen by the physicians of the hospital staff on April 6, 1956, and they thought it was proper that he should go on leave again and another period of leave was granted him on April 6, 1956, the third day after the accident. It is not claimed that any of the doctors found evidence of torn ligaments, a general strain, or symptoms of any injury. The suggestion of these things exists only in assumption and as an afterthought. The doctrine is that the value of the opinion of an expert witness is dependent on and is no stronger than the facts on which it is predicated. The opinion is without probative force unless the assumptions on which it is based are shown to be correct. Pueppka v. Iowa Mutual Ins. Co., 165 Neb. 781, 87 N. W. 2d 410.

An additional obstacle to the success of appellant in this litigation is the failure of proof of the extent of any physical injury to him or the extent of any aggravation of any previous physical condition of which appellant was a victim at the time of the accident. It was the conclusion of Dr. Ferciot that the accident may have been an aggravating factor in the condition of appellant

only if he sustained a severe jolting injury and there was an onset of symptoms, of which qualifying conditions there is no proof, or appellant might have had all the conditions with which he suffered if there had been no accident in which he was involved. The doctor said he knew of no way in which to evaluate the degree or extent of any aggravation which any injury of the accident could have caused appellant.

The estimate of Dr. Getscher of the permanent restriction of function of the body of appellant as a whole which impaired his ability to work was about 10 to 15 percent but he explained that the estimated disability of which he spoke resulted, in his opinion, from all causes which affected appellant, including his defective lower back, the result thereof, and the surgical operations. The doctor expressed this view in these words: "As a result of everything that has happened up until today * * *." Dr. Getscher or any other witness did not attempt to evaluate what if any disability or damage was caused appellant by the accident alone. The extent of the injury or damage was an element of the case of appellant and proof thereof was indispensable to his success. Borcherding v. Eklund, *supra;* Wylie v. Czapla, *supra;* Weisenmiller v. Nestor, 153 Neb. 153, 43 N. W. 2d 568; Restatement, Torts, § 912, p. 574.

The judgment should be and it is affirmed.

AFFIRMED.