MARY MAHONEY, APPELLEE, v. NEBRASKA METHODIST HOSPITAL, INC., A NEBRASKA CORPORATION, APPELLANT.

560 N.W.2d 451

Filed February 28, 1997. No. S-95-330.

Joseph S. Daly, of Sodoro, Daly & Sodoro, P.C., for appellant.

Gregory M. Schatz for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, and GERRARD, JJ., and LUTHER, D.J.

CONNOLLY, J.

Nebraska Methodist Hospital, Inc., having admitted liability, appeals a jury verdict in favor of appellee, Mary Mahoney, in the amount of $400,000. Methodist Hospital asks this court to reverse the verdict and remand the cause because the trial court erred in excluding Methodist Hospital's expert testimony, in not admitting evidence of Mahoney's early retirement pension, and in instructing the jury on cosmetic deformity. We affirm the jury's verdict.

## BACKGROUND

On July 13, 1990, police officer Mary Mahoney was attempting to provide crowd control in a riot disturbance in Omaha, Nebraska. While performing these duties, Mahoney was struck by a car. As a result, she suffered an injury to her right knee and was transported to a hospital for treatment. Mahoney ultimately had arthroscopic surgery on her right knee on September 11, 1990. Subsequent to this surgery, she returned to her duties as a police officer.

Despite the surgery, Mahoney continued to experience pain and mobility problems with her right knee. In February 1991, she sought the services of Dr. William M. Walsh, an orthopedic surgeon. Walsh first attempted to treat the injured knee with noninvasive procedures, such as physical therapy and taping to hold the kneecap in place. When these techniques failed to produce effective results, Walsh performed arthroscopic surgery on Mahoney's knee on April 8, 1991, during which the kneecap was realigned. Because of complications, Mahoney's knee

filled up with blood, requiring a third surgical operation on the knee to drain the excess blood. Following Mahoney's recovery from the surgeries, she returned to her job as a police officer on August 1, 1991, with no restrictions. In releasing Mahoney back to work, Walsh was aware of the physical requirements of being a police officer.

Mahoney returned to Walsh for a 6-week followup on August 27, 1991, complaining of pain in her right knee. Walsh determined she was suffering from a condition known as reflex sympathetic dystrophy. This condition involves an imbalance of sympathetic nerve flow into an extremity, often resulting in pain, tingling, and numbness. In order to treat this condition, Walsh ordered a series of sympathetic nerve blocks to control Mahoney's pain. Mahoney was told these injections would offer relief to her leg in that they would dilate the blood vessels.

The injections were given by an anesthesiologist on an outpatient basis at Methodist Hospital. Prior to the actual injection, the contents of the nerve-block shot would be prepared by dissolving a guanethidine pill in a saline solution. The solution would then be put into a syringe. After draining the blood from Mahoney's leg with the use of a tourniquet, the anesthesiologist would inject the solution into her leg.

Mahoney was to receive a series of 16 shots, with the first commencing on August 29, 1991. Mahoney continued to work as a police officer with no restrictions during her first 12 nerve-block treatments. On October 31, she received her 13th nerve-block injection at Methodist Hospital. During the administration of this injection, Mahoney experienced severe cramping and burning in her leg. Tests were ordered to help determine the cause of Mahoney's pain. It was later determined that Mahoney had suffered a hypertonic saline injection injury because a pharmacist employed by the hospital had prepared the injection incorrectly. The hospital admitted its liability in this respect.

Mahoney was required to stay in the hospital for a period of 15 days following the damaging injection. Throughout her stay, she experienced extreme pain and swelling and required daily injections of morphine and other narcotic drugs. In the spring of 1992, Walsh concluded that Mahoney would be unable to return to her job because of the injuries she suffered to her knee in the

car and hospital incidents. Mahoney subsequently retired from the Omaha Police Division in May 1992 and now receives a pension.

At trial, Mahoney offered evidence to establish the extent of her knee damage due to the hypertonic saline injection injury. Walsh testified that Mahoney's knee had a 30-percent permanent impairment, with 25 percent being attributable to the car accident and 5 percent attributable to the hypertonic saline injection injury at Methodist Hospital. In Walsh's opinion, the permanent impairment to Mahoney's knee because of the injection injury includes numbness in her calf; throbbing discomfort during long periods of standing; the possibility of edema, or swelling, of the right calf; and muscle spasms. At one point, Walsh testified that Mahoney might not have been able to return to work as a police officer even if the incident had not occurred at Methodist Hospital. However, Walsh stated that he informed the Omaha Police Division that Mahoney would be unable to return to the police force because of both the car accident and the injury sustained while receiving the nerve-block injection.

Methodist Hospital attempted to offer the deposition testimony of its own expert, Dr. Donald Gammel. In his deposition, Gammel testified that Mahoney's knee was 35 percent permanently impaired, with 25 percent attributable to the car accident and the remaining 10 percent attributable to the hypertonic saline injection injury. When Gammel was asked his opinion on whether Mahoney could have returned to work had the vascular injury at Methodist Hospital not occurred, counsel for Mahoney objected on the basis of foundation. During cross-examination at the deposition, Gammel stated that he was not aware of Mahoney's tasks as a police officer and that his opinion as to her not being able to return despite the saline injection injury was based on "lack of information" regarding her day-to-day activities as a police officer. The court sustained the foundation objection to Gammel's testimony.

The district court also sustained Mahoney's motion in limine preventing Methodist Hospital from introducing evidence that she was currently receiving an early retirement pension from the Omaha Police Division. The court made its ruling on the basis that any income Mahoney may be receiving from the

police department was inadmissible under the collateral source doctrine.

The jury returned a verdict in favor of Mahoney and awarded her $400,000 in damages. Methodist Hospital appeals, challenging the damage award.

## ASSIGNMENTS OF ERROR

Methodist Hospital contends the district court erred in (1) not allowing Gammel to give his expert opinion as to whether Mahoney could have returned to work absent the Methodist Hospital incident, (2) not allowing Methodist Hospital to introduce evidence of Mahoney's pension, (3) giving an improper jury instruction, and (4) not granting a new trial because the jury award was excessive and given under the influence of passion or prejudice.

## STANDARD OF REVIEW

A trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be reversed only when there has been an abuse of discretion. *McArthur v. Papio-Missouri River NRD*, 250 Neb. 96, 547 N.W.2d 716 (1996); *McIntosh v. Omaha Public Schools*, 249 Neb. 529, 544 N.W.2d 502 (1996).

When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Grand Island Latin Club v. Nebraska Liq. Cont. Comm., ante* p. 61, 554 N.W.2d 778 (1996).

A jury verdict will not be disturbed on appeal as excessive unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995); *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994).

## ANALYSIS

Methodist Hospital's first assigned error concerns the district court's sustaining the foundation objection to Gammel's testimony regarding Mahoney's ability to work as a police officer despite the injury she sustained as a result of the injection.

Methodist Hospital asserts this was error because the record establishes that Gammel was fully aware of Mahoney's condition and medical history and that he possesses the requisite skill, training, and experience necessary to give an expert opinion.

To clarify, Mahoney's objection to Gammel's testimony did not concern his capacity as an expert in the evaluation of disabling injuries. Indeed, the objection to Gammel's testimony concerns only his knowledge of pertinent facts on which his opinion was offered. A firm understanding of the pertinent, underlying facts is critical when an expert offers his or her opinion.

> Expert testimony should not be received into evidence if it is evident that the witness does not possess such facts that enable him to express a reasonable, accurate conclusion as distinguished from a mere guess. Without an adequate basis of facts, the witness should not be allowed to give an opinion.

*Menkens v. Finley, ante* p. 84, 93, 555 N.W.2d 47, 53 (1996). See, also, *Ketteler v. Daniel, ante* p. 287, 556 N.W.2d 623 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

After a proper foundation objection was made during Gammel's deposition testimony, Gammel admitted during his cross-examination that he was unaware of the tasks Mahoney was required to perform while working as a police officer. In addition, Gammel admitted that his opinion that Mahoney could not return to work as an officer despite the hypertonic saline injection injury was based on a "lack of information" as to her day-to-day activities as a police officer. On redirect examination, Gammel testified that he was somewhat familiar with the duties of a police officer on account of what he has seen on television and of his "general sense" of what "beat cops" do. This testimony of Gammel makes it apparent that he possessed no knowledge of the physical demands actually placed upon Mahoney as a police officer. As such, Gammel lacked knowledge of facts necessary to support his opinion concerning Mahoney's ability to perform as a police officer in Omaha. Recognizing that a trial court's ruling in receiving or excluding an expert's testimony which is otherwise relevant will be

reversed only when there has been an abuse of discretion, *McArthur v. Papio-Missouri River NRD, supra*; *McIntosh v. Omaha Public Schools, supra*, we conclude that the district court did not abuse its discretion in excluding Gammel's testimony concerning Mahoney's ability to return to work as a police officer.

In its next assigned error, Methodist Hospital asserts the district court incorrectly precluded it from offering any evidence of the pension Mahoney is receiving as a result of her early retirement from the Omaha Police Division. Methodist Hospital argues that the pension is paid to Mahoney because of the car accident injury to her knee and is therefore not a collateral source regarding the injury she suffered to her knee as a result of the injection. Mahoney contends the lower court's ruling is correct because the collateral source rule prohibits the mitigation of personal injury damages with evidence establishing that the injured party is being compensated by another party during her disability.

Under the collateral source rule, the fact that the party seeking recovery has been wholly or partially indemnified for a loss by insurance or otherwise generally cannot be set up by the wrongdoer in mitigation of damages. *Chadron Energy Corp. v. First Nat. Bank*, 236 Neb. 173, 459 N.W.2d 718 (1990). We have stated:

> This rule provides that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. The theory underlying the adoption of this rule by a majority of jurisdictions is to prevent a tort-feasor from escaping liability because of the act of a third party, even if a possibility exists that the plaintiff may be compensated twice.

*Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 232 Neb. 763, 767, 443 N.W.2d 872, 875 (1989).

Ordinarily, compensation recognized as coming from a collateral source occurs in situations involving only one damaging incident. The instant case is unusual in that there exist two separate, and seemingly unrelated, injuries to Mahoney's knee: one injury attributed to the car accident and one injury attributed to

the injection injury. Due to this division, Methodist Hospital asks us to declare the pension Mahoney receives from the Omaha Police Division to be related only to that portion of her permanent knee injury sustained because of the car accident. As such, Methodist Hospital asserts that the pension was not "collateral" to any injury Mahoney suffered because of the injection injury and that evidence of it should therefore have been admitted for the purpose of mitigating damages.

This court has not had occasion to address the application of the collateral source rule in a situation in which there are two separate injuries. As a general matter, however, we have held that presenting evidence of a pension or disability benefits is inappropriate for purposes of determining damages. In *Harper v. Young*, 139 Neb. 624, 298 N.W. 342 (1941), the plaintiff sought recovery for damages he sustained in a car accident. Throughout the trial, evidence was adduced that the plaintiff would be eligible for a pension in the future and that he could have obtained compensation from the government for his injuries had he applied for them. This court remanded the cause, holding that the introduction of this evidence without limiting instructions was "not admissible upon any theory" and therefore prejudicial to the plaintiff. *Id.* at 630, 298 N.W. at 345. See, also, *Singles v. Union P. R.R. Co.*, 174 Neb. 816, 119 N.W.2d 680 (1963) (holding error committed in admission of testimony regarding size of pension, because financial conditions of parties are immaterial); Annot., Collateral Source Rule: Receipt of Public or Private Pension as Affecting Recovery Against a Tortfeasor, 75 A.L.R.2d 885 (1961) (stating general rule that payments from a collateral source may not be taken into consideration in assessing damages).

Other jurisdictions that have examined the precise issue put before us have concluded that benefits received for an initial injury are inadmissible to mitigate the damages of a subsequent tort-feasor responsible for further injury. In *Holman v. Grandview Hosp. & Med. Ctr.*, 37 Ohio App. 3d 151, 524 N.E.2d 903 (1987), the plaintiff was hospitalized for a permanently disabling back injury. Prior to surgery, he was to receive periodic injections of pain medication. A nurse improperly gave a shot, resulting in further injuries to the plaintiff. At trial, the

defendant hospital attempted to introduce evidence that the plaintiff was receiving payments for workers' compensation. The court, after determining that the statutory malpractice statute did not apply, held that evidence of such collateral source payments was inadmissible.

Likewise, in *Jones v. Laird Foundation, Inc.*, 156 W. Va. 479, 195 S.E.2d 821 (1973), the plaintiff suffered an initial injury to his back while at work. While hospitalized, he received inadequate care from a physician that caused further injury to his back. Due to the extent of both injuries, the plaintiff was awarded workers' compensation benefits. In reviewing the appeal of the plaintiff's claim against the physician, the West Virginia Supreme Court held that the plaintiff's compensation benefits were a collateral source and therefore could not be considered in mitigation of damages in the action against the physician for the additional injury to the plaintiff's back.

In the instant case, Mahoney testified that she continued to work as a police officer during the timeframe in which she was receiving the injections at Methodist Hospital. It was only after the October 31, 1991, injection that Mahoney was unable to return to work. At trial, Walsh testified that he informed the Omaha Police Division that Mahoney would be unable to perform her tasks as a police officer because of permanent injuries to her knee due to *both* the car accident *and* the injection injury. Faced with this diagnosis, she retired and began receiving her pension. Thus, the pension benefits Mahoney is now receiving are essentially for both injuries she sustained to her knee. Therefore, in accordance with both this court's repeated statements that presenting evidence of a pension is inappropriate for determining damages and the reasoning of those courts that have examined the operation of the collateral source rule in the context of two separate injuries, we conclude that Mahoney's pension is, in fact, a "collateral" and "independent" source of income for Mahoney's injuries suffered because of Methodist Hospital's negligence. That being the case, the second assigned error is without merit.

As its third assignment of error, Methodist Hospital contends the district court erred in instructing the jury regarding damages. In particular, Methodist Hospital argues that portion of

jury instruction No. 13 which provided that "[f]uture disability is not limited to functional disability, but includes cosmetic deformity as well" was incorrectly given because it was taken from the comments to and not the text of NJI2d Civ. 4.01, the pertinent instruction concerning general damages.

We have previously noted that "the instructions contained in the second edition of the Nebraska Jury Instructions are designed to be used when they reflect the law and the pleadings and evidence call for such an instruction." *Anderson v. Nashua Corp.*, 246 Neb. 420, 426, 519 N.W.2d 275, 281 (1994). Obviously, any instruction derived from the comments to the Nebraska Jury Instructions must also meet the same criteria. Simply because instruction No. 13 in the instant case used language from the comments to NJI2d Civ. 4.01 does not require us to determine the instruction erroneous per se. To so hold would essentially deny a court the opportunity to properly formulate instructions that are tailored to the case at hand. Such a result would be at odds with our repeated statement:

> " ' "The purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict; and, with this end in view, it should state clearly and concisely the issues of fact and the principles of law which are necessary to enable them to accomplish the purpose desired.". . .' "

*First Nat. Bank v. Bolzer*, 221 Neb. 415, 420, 377 N.W.2d 533, 536-37 (1985), quoting *Bodtke v. Bratten*, 166 Neb. 36, 88 N.W.2d 159 (1958).

Thus, for purposes of this appeal, we must determine whether the instruction given on cosmetic deformity is supported by the law and the evidence of the case. See *Anderson v. Nashua Corp., supra*. In this regard, we note that an instruction on cosmetic deformities for purposes of future disability was upheld by this court in *Stapleton v. Norvell*, 193 Neb. 71, 225 N.W.2d 409 (1975), where the evidence adduced at trial established that the plaintiff suffered permanent scarring due to lacerations she received during a car accident. We conclude that the evidence in the instant case also supports an instruction on cosmetic deformity. Walsh testified that the difference in size

between Mahoney's left and right calves, as a result of the accident, was permanent in nature. Likewise, Mahoney testified that her calves were notably different in size as a result of the accident and that she has a scar on her forearm due to an infection from the IV's in her arm. In light of this evidence, the court did not err in instructing the jury on cosmetic deformity.

The last assigned error concerns the amount of the jury verdict. According to Methodist Hospital, the $400,000 verdict is so excessive in nature that it demonstrates the jury acted with extreme passion and prejudice. We disagree.

A jury verdict will not be disturbed on appeal as excessive unless it is so clearly against the weight and reasonableness of the evidence and so disproportionate as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or that the jury disregarded the evidence or rules of law. *Barks v. Cosgriff Co.*, 247 Neb. 660, 529 N.W.2d 749 (1995); *McDonald v. Miller*, 246 Neb. 144, 518 N.W.2d 80 (1994). An examination of the record in this case leads us to conclude that the jury verdict in favor of Mahoney was not excessive. At the time Mahoney received her injury at Methodist Hospital, she was a young police officer with substantial earning capacity. In 1989, her gross income was $41,399.28, and for 1990, it was $35,061. Mahoney testified at trial that she had planned on working as a police officer until the mandatory retirement age of 62. According to the dictates of Walsh, Mahoney's injuries to her knee make it impossible for her to fulfill that goal. The economic ramifications are substantial considering that James Rogers, a vocational rehabilitation counselor, testified that Mahoney's job qualifications allow her to make only $4.50 to $9 per hour.

In addition to the loss of her employment and earning capacity, Mahoney also testified that she experienced considerable pain and suffering as a result of Methodist Hospital's negligence. As noted above, Mahoney was constantly on high doses of pain medication for the 2 weeks following the nerve-block injection. In light of this evidence, we cannot conclude that the $400,000 jury verdict in this case is excessive. Accordingly, the fourth assignment of error is without merit.

## CONCLUSION

In accordance with the above analysis, we conclude that no error was made and that the jury verdict in favor of Mahoney should be affirmed.

AFFIRMED.